483 F.2d 690
 5 ERC 1917, 3 Envtl. L. Rep. 20,821
 NATURAL RESOURCES DEFENSE COUNCIL, INC., a non-profit New
York corporation, et al., Petitioners,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent,
Iowa Wildlife Federation, Inc., a non-profit Iowa
corporation; and Joel D. Benson, Intervenors.
 No. 72-1380.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 9, 1973.
Decided July 27, 1973.
 
 Richard E. Ayres, New York City, for petitioners.
 Alfred T. Ghiorzi, Atty., Dept. of Justice, Washington, D. C., for respondent.
 Before GIBSON, BRIGHT, and ROSS, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Petitioners, under 42 U.S.C. Sec. 1857h- 5(b)(1),[1] seek review of the decision of the Administrator of the Environmental Protection Agency (EPA) approving portions of Iowa's Air Pollution Control Implementation Plan (Iowa Plan) adopted pursuant to Sec. 110 of the Clean Air Act Amendments of 1970, 42 U.S.C. Sec. 1857c-5.
 
 
 2
 The 1970 Amendments require the Administrator to establish primary and secondary ambient air quality standards which specify maximum amounts of pollutants to be allowed in the ambient air. Primary standards establish allowable maximums consistent with protection of the public health; secondary standards delineate maximums consistent with protection of the public welfare from any known or anticipated adverse effects associated with the presence of pollutants. The 1970 Amendments require each state to submit to the Administrator a plan for implementation, maintenance, and enforcement of the federal standards, Sec. 1857c-5(a)(1). The plan must be designed to achieve primary standards as expeditiously as practicable, but in no case later than three years from the date of approval of such plan, and secondary standards within a reasonable time, Sec. 1857c-5(a)(2)(A). The Administrator is to approve or disapprove each portion of the plan depending on whether it conforms with the prescribed deadlines for attainment of national standards and with other criteria set out in Sec. 1857c-5(a)(2).[2] If any plan or portion thereof fails to conform to statutory requirements, the Administrator ultimately is directed to promulgate such regulations as may be necessary to cure the deficiency, Sec. 1857c-5(c).
 
 
 3
 Petitioners allege four deficiencies in the Iowa Plan as approved by the Administrator.
 
 I.
 
 4
 Petitioners argue that the Iowa Plan fails to make adequate provision for intergovernmental cooperation to prevent interstate pollution which would interfere with the attainment and maintenance of national standards. The 1970 Amendments require that state plans contain:
 
 
 5
 [A]dequate provisions for intergovernmental cooperation, including measures necessary to insure that emissions of air pollutants from sources located in any air quality control region will not interfere with the attainment or maintenance of such primary or secondary standard in any portion of such region outside of such State or in any other air quality control region[.] [42 U.S.C. Sec. 1857c-5(a) (2)(E).]
 
 
 6
 The Administrator, seeking to clarify the statutory requirement, promulgated a regulation providing that:
 
 
 7
 Each plan shall provide assurances that the State agency having primary responsibility for implementing national standards in any region, or portion thereof, will promptly transmit to other State agencies having similar or related responsibility in the same or other States, information on factors (e.g., construction of new industrial plants) which may significantly affect air quality in any portion of such region or in any adjoining region. [40 C.F.R. Sec. 51.21(c).]
 
 
 8
 Petitioners contend that the mere exchange of information endorsed by the regulation will preclude the establishment of "binding enforcement agreements" which the statute allegedly requires. Respondent answers that Sec. 1857c-5(a)(2)(E) does not require state plans to contain interstate compacts regulating interstate pollution.
 
 
 9
 We agree with respondent. The exchange of information called for in 40 C.F.R. Sec. 51.21(c)[3] constitutes a form of "intergovernmental cooperation" which will provide a basis for evaluating the impact of pollutants in interstate regions. Based on such information, states, or the Administrator if necessary, can set emission standards and compliance requirements which will insure the timely attainment and maintenance of national standards.[4]
 
 
 10
 We believe that Congress has left to the sound discretion of the Administrator the determination of what degree of governmental cooperation and other measures are necessary to insure noninterference with the attainment and maintenance of national standards. Cf. Natural Resources Defense Council, et al. v. Environmental Protection Agency, 478 F.2d 873, 883-884 (1st Cir. 1973). Absent evidence to the contrary, we are satisfied that the proposed information exchange is a viable means for accomplishing the statutory end.
 
 II.
 
 11
 Petitioners contend that state variance procedures[5] incorporated in the approved Iowa Plan are inconsistent with the 1970 Amendments in that (1) they circumvent the federal postponement provisions of 42 U.S.C. Sec. 1857c-5(f), allegedly intended to be the sole avenue for deferring compliance with any requirement of a state plan, and (2) they allow for the consideration of such economic factors as technological feasibility in the granting of variances, contrary to the intent of Congress.
 
 
 12
 Respondent replies that the federal postponement procedures were not intended to be the sole means of deferring compliance with requirements of a state plan. It further argues that the practice by the EPA Administrator of treating variances concurred in by state agencies as requests for plan "revisions," makes these proposed changes subject to plenary review by the Administrator under Sec. 1857c-5(a)(3). Since such revisions come under the Administrator's jurisdiction on review, the attainment and maintenance of national standards will not be undermined.
 
 
 13
 The First Circuit in Natural Resources Defense Council, supra, 478 F.2d 873, at 884-888 (1973), dealt with this identical issue. It held that states could apply their variance procedures during the "preattainment" period when states were striving to bring themselves into initial compliance with national standards, but that the federal postponement procedures of Sec. 1857c-5(f), with limited exceptions, must govern in the "postattainment" period when states would be required to maintain national standards.[6] The court further concluded that the Administrator must require the revision of defective portions of a state plan (such as provisions allowing for considerations of economic cost and hardship in the granting of variances), even though the plan is based on state statutes or regulations, because the 1970 Amendments take precedence over state law.
 
 The First Circuit directed:
 
 14
 With respect to the Rhode Island variance provision, the Administrator is directed to take the following action:
 
 
 15
 The Administrator shall publish his disapproval of the portion of the Rhode Island implementation plan consisting of the variance statute (G.L. R.I. Sec. 23-25-15) insofar as the statute permits the granting of any variance after the federal compliance dates for attainment of national primary and secondary standards (except minor deferrals as hereinabove described); insofar as it permits the granting of any variance prior to these dates not first approved by the Administrator; and insofar as it permits the granting of any variance other than one conforming to requirements set forth in regulations to be promulgated as part of the Rhode Island plan by the Administrator. After issuing such disapproval, the Administrator shall promptly promulgate regulations, as part of the Rhode Island plan, specifying the limited terms, conditions and circumstances under which state variances may still be issued. Such terms, conditions and circumstances shall be consistent with this opinion and may include additional more restrictive provisions as deemed appropriate by the Administrator. [National Resources Defense Council, supra, 478 F.2d at 888.]
 
 
 16
 Although respondent administratively would require review of variances granted by a state, we think it proper that provisions of the Iowa Plan be in specific accord with federal statutory requirements. Accordingly, we adopt the remedy outlined in the First Circuit opinion and direct the Administrator to take similar action, as necessary, in regard to the variance provisions incorporated in the Iowa Plan.
 
 III.
 
 17
 Petitioners' next argument challenging provisions of the Iowa Plan allowing consideration of economic costs in the issuance of state abatement orders is closely related to the second alleged defect in Iowa's variance procedures. However, the respondent agency notes that such economic considerations will not enable Iowa to postpone its compliance with national ambient air quality standards beyond the three-year deadline of May 31, 1975. Accordingly, this objection is resolved against petitioners in light of our comments in part II of this opinion relating to state variance procedures and the further elaboration of the First Circuit on the identical objection in its opinion in Natural Resources Defense Council, supra, 478 F.2d at 888-889.
 
 IV.
 
 18
 Petitioners, finally, argue that Iowa's new-source review procedure does not fulfill requirements of the 1970 Amendments pertaining to such sources. They allege that the Iowa permit system is deficient in three respects:
 
 
 19
 First, it fails to require the denial of a permit where a source would prevent the attainment or maintenance of a National Air Quality Standard. Second, it fails to contain procedures for reviewing the location of new sources. Third, it fails to ensure that a source granted a permit must comply with all applicable portions of the control strategy. [Petitioners' Br. at 42.]
 
 
 20
 Respondent concedes the validity of the first contention and will take steps to compel Iowa to submit a revision of its plan to remedy the defect in its regulation. Respondent, however, argues that the Iowa permit system (a) inherently requires consideration of source location and (b) provides for compliance with all applicable portions of the control strategy.
 
 
 21
 We agree with respondent. It is logical to assume that a rational permit system would inherently require consideration of the location of pollution sources. However, we need not decide whether the statute requires that a state plan specifically mention location as a consideration. The Iowa Plan states that a permit is not transferrable from one "location" to another, Sec. 3.1(2)a. (2) (Vol. I, p. 35). We believe that this indicates explicitly that location is an overriding concern in the granting of a permit under the Iowa Plan.
 
 
 22
 Petitioners' argument that the procedures governing the review of new sources and modifications do not require continuing compliance with the State's control strategy as contemplated by EPA regulations[7] is similarly without merit. 40 C.F.R. Sec. 51.12 makes clear that the control strategy for a given state is its rules and regulations designed with the approval of the EPA Administrator to implement the purposes of the 1970 Amendments. Section 2.1(1) of Iowa's Rules and Regulations relating to Air Pollution Control, incorporated in the Iowa Plan as the procedure applicable to the review of new sources, Sec. 9.1.0 (Vol. II, p. 446), provides:
 
 
 23
 2.1(1) New equipment. All new equipment and all new control equipment, as defined herein, installed in this state shall perform in conformance with applicable emission standards specified in chapter 4 of these rules and regulations. [Vol. I, p. 32 (emphasis added).]
 
 
 24
 We are satisfied that this comports with the requirements of 40 C.F.R. Sec. 51.-18(d).
 
 
 25
 We affirm the Administrator's approval of provisions of the Iowa Plan regarding (1) intergovernmental cooperation and (2) source location and continuing compliance with the control stategy under the Iowa permit system for new and modified sources.
 
 
 26
 Variance procedures and considerations of economic feasibility in the issuance of abatement orders insofar as they are applicable under the Iowa Plan to maintenance of clean air in the post-attainment period following May 31, 1975, are disapproved in their present form and respondent should take appropriate action to remedy these deficiencies.
 
 
 
 [1]
 This jurisdictional provision states:
 A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c-5 of this title or section 1857c-6(d) of this title may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation or approval, or after such date if such petition is based solely on grounds arising after such 30th day.
 
 
 [2]
 A general critique of the federal regulations promulgated pursuant to these criteria is found in Note, Clean Air Act Amendments of 1970: A Congressional Cosmetic, 61 Geo.L.J. 153, 172-184 (1972)
 
 
 [3]
 The Iowa Plan, in conformity with the regulation, provides:
 All applicable air quality and emission inventory information available has been transmitted to the States of Illinois, Nebraska, South Dakota and Wisconsin. The States of Nebraska, South Dakota, and Wisconsin have forwarded similar information relative to those states. It is the intent of the State of Iowa to continue to furnish any available data needed, including control strategy development, to implement control plans to the states included jointly in interstate air quality control regions. [Sec. 10.2.0 (Vol. II, p. 450)].
 
 
 [4]
 Section 10.2.0 of the Iowa Plan (Vol. II, p. 450) further states that:
 Information obtained to date through conferences and other means indicates rather definitely that no organized regional control agencies or boards will be developed for any of the interstate air quality control regions affecting the State of Iowa. Therefore, it is the intent for the State of Iowa to conduct the applicable and appropriate control activities in all portions of the State; and to continue to develop and to expand the mutual interchange of basic information on control strategies and enforcement actions with the surrounding states involved. [Emphasis added.]
 We think this language evidences a clear resolve within the framework of the Iowa Plan to control interstate pollution effectively.
 
 
 [5]
 Iowa Code Ann. Sec. 136B.13. These procedures define circumstances under which and the manner whereby an individual pollution source can defer compliance with state air quality standards
 
 
 [6]
 The court's reasoning was based primarily on the greater need for flexibility which it saw in the preattainment period and its conclusion that the Administrator's review of variance requests would preserve the integrity of the long-term compliance deadlines provided by statute
 In a post-argument memorandum directed to the First Circuit's decision, petitioners argue that states should not be allowed to utilize their variance procedures even in the preattainment period since compliance schedules tailored to the needs of individual pollutors pursuant to Sec. 1857c-5(a)(2)(B) are the appropriate means for, and provide flexibility in, deferring compliance during the preattainment period. While compliance schedules do interject some flexibility tailored to individual need, we do not agree with petitioners' implication that variance procedures are either surplusage or somehow inconsistent with the compliance-schedule framework of the statute. Such procedures seem rather to complement that general framework of flexibility within the mandatory compliance deadlines for achieving national standards.
 
 
 [7]
 40 C.F.R. Sec. 51.18(d) states:
 Such procedures shall provide that approval of any construction or modification shall not affect the responsibility of the owner or operator to comply with applicable portions of the control strategy.