**METROPOLITAN WASHINGTON COALITION FOR CLEAN AIR et al.**

*v.*

**DISTRICT OF COLUMBIA et al.**

**Civ. A. Nos. 1424–73, 1844–73.**

United States District Court,
District of Columbia.

Feb. 20, 1974.

Motion to Amend Denied March 12, 1974.

Gilbert Hahn, Washington, D. C., for plaintiffs.

C. Francis Murphy, Corp. Counsel, John C. Salyer, Asst. Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This is an action brought under the Clean Air Act of 1970 [1] to enforce an air pollution emission standard. The matter is now before the Court on Defendants' Amended Motion to Dismiss and on Plaintiffs' Motion for Preliminary Injunction. At oral argument the Court directed, sua sponte, that final hearing on the merits be consolidated with the hearing on the Preliminary Injunction, pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure. The Court has determined that the case turns only on questions of law, that there are no disputed issues of material fact and that final judgment is therefore appropriate.

This case centers on the continued operation of Incinerator No. 5, a municipal incinerator operated by the District of Columbia as part of the municipal solid waste management program. Under the Clean Air Act [2] the District of Columbia was required to, and did, prepare an Air Quality Implementation Plan for Controlling Sulfur Oxide and Particulate Pollutants in the District of Columbia. That plan consisted in part of the Air Quality Control Regulations enacted by Regulation 72-12 of the District of Columbia. [3] As required by the Clean Air Act, the Implementation Plan was submitted to and approved by the Administrator of the Environmental Protection Agency as the official Implementation Plan for the District of Columbia. The Plan as adopted and approved specifical-

ly contemplated that Incinerator No. 5 would cease operation on July 4, 1973. [4]

On May 31, 1973, the Mayor-Commissioner of the District of Columbia formally requested action by the City Council to amend the Health Regulations and the Implementation Plan to eliminate the requirement that Incinerator No. 5 be closed on July 4, 1973. Failure to do so, the Mayor indicated, would precipitate an "immediate crisis" in the city's waste management program. On July 2, 1973, the Mayor-Commissioner again wrote to the City Council, requesting emergency action to adopt the requested amendments permitting the continued operation of Incinerator No. 5 in order to avoid "severe adverse effects on the health and welfare of the citizens of the District of Columbia." On July 3, 1973, after testimony by a representative of the Mayor, the Council enacted emergency Regulation 73-16, permitting continued operation of Incinerator No. 5 through September 4, 1973. Meanwhile, following the Mayor's initial request for action, but before the July 3 Emergency Regulation, the City Council had initiated more regular procedures for notice and public hearing on a proposed Regulation extending the life of Incinerator No. 5 through June 30, 1974. That Regulation, No. 73-18, obtained final passage by the Council and approval by the Mayor on September 4, 1973. Plaintiffs challenge these regulations authorizing continued operation of Incinerator No. 5 as impermissible revisions of an approved Implementation Plan under the Clean Air Act.

Section 304 of the Clean Air Act [5] allows "any person" to commence a civil action to enforce "an emission standard or limitation under this chapter." "Emission standard or limitation" is defined to include "a schedule or timetable of compliance . . . which is in effect . . . under an applicable implementa-

---

1. 42 U.S.C. § 1857h-2.

2. 42 U.S.C. § 1857c-5.

3. July 2, 1972, Title 8, §§ 2:701 et seq., District of Columbia Rules and Regulations.

4. Regulation 72-12, §§ 8-2:709(e), 8-2:724(a)(2), District of Columbia Regulations.

5. 42 U.S.C. § 1857h-2.

tion plan."[6] Thus absent a valid revision of the plan or authorized postponement of the timetable, the Court is required to enforce the original timetable for Incinerator No. 5's compliance with the District of Columbia Air Quality Implementation Plan.

Defendants dispute Plaintiffs' compliance with the statutory requirement that notice of the alleged violation be provided to the Environmental Protection Agency, the State, and the alleged violator (here the State) sixty (60) days prior to commencement of suit.[7] It is undisputed here that Plaintiffs failed to give the required notice prior to filing Civil Action 1424–73. That failure is the reason for the filing of the second suit herein, Civil Action 1844–73, raising identical issues. Plaintiffs did give the required notice of the alleged violations prior to commencement of the second action. That written notice took the form of providing copies of the original complaint in Civil Action 1424–73, to those parties required by statute and regulation [8] to receive such notice.

■ It should be noted that the statutory requirement of notice was not intended to bar lawsuits such as the present one, but at most to delay such suits for sixty (60) days in order to allow appropriate officials time to act.[9] Thus the purpose and effect of this notice requirement is unlike some other notice requirements where non-compliance bars suit forever.[10] This latter type of notice requirement was designed primarily to assure prompt claims and allow prompt investigation. Such concerns are not involved in the present situation, where by the very creation of private remedies Congress evidenced its primary concern with enforcement of Clean Air standards. If official enforcement activities are not initiated within sixty (60) days after notice of violation then citizens suits for enforcement are proper means of enforcement.[11]

■ Thus, had Civil Action 1424–73 been dismissed for failure to comply with the statutory notice requirement, such dismissal would not be a bar to initiation of a new lawsuit on the same issues after compliance with the statute. Defendants' argument that a prior dismissal on such grounds would be res judicata is incorrect. In the present context, a second lawsuit with proper notice was in fact filed before the Court could rule on the Motion to Dismiss the first complaint. In light of this fact, rather than dismiss the first action and require identical new motions in the second action the Court has simply granted Plaintiffs' Motion that the cases be consolidated. The Court finds that Plaintiffs have complied with the statutory requirements for notice.

■■ Defendants also dispute Plaintiffs standing to sue. As noted above, the Act allows "any person" to file suit to enforce clean air standards. Nevertheless this does not, as Plaintiffs seem to argue, dispense with the necessity that such a person demonstrate a sufficient interest in the specific controversy as to meet traditional concepts of standing. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636

---

6. 42 U.S.C. § 1857h–2(f).

7. 42 U.S.C. § 1857h–2(b)(1)(A). 42 U.S.C. § 1857h(d) defines "state" to include the District of Columbia for purposes of the Act.

8. 40 C.F.R. § 54.1–.3 elaborates on the statutory notice requirement. While the regulations require certified mail the notices in this case were served on the appropriate District of Columbia officials by Deputy United States Marshals. Notice to the Environmental Protection Agency was apparently by regular mail, but written acknowledgement of receipt was requested and provided. The Court deems this substantial compliance with the applicable regulations.

9. See S.Rept.No.1196, 91st Cong., 2d Sess., at 37 (1970), U.S.Code Cong. & Admin.News 1970, p. 5356; 116 Cong.Rec. 32926–27, 33102–03 (1970) (Remarks of Sen. Muskie).

10. E. g. 12 D.C.Code § 309; see Boone v. District of Columbia, 294 F.Supp. 1156 (D. D.C.1968).

11. City of Riverside v. Ruckelshaus, Civil No. 72–2122–1H (C.D.Cal. No. 16, 1972), 3 E.L.R. 20043 (1973).

(1972) sets forth the test for standing as allegation of an "injury in fact" attributable to the challenged action of the Defendant. The Court finds that the Complaints herein, though inartfully drawn, adequately allege injury to the health and property interests of the Plaintiffs as residents of the locality in which the emission violations occur.[12]

█ Defendants have stressed at length herein the broad powers of the local government with regard to health regulations, citing legislative discretion and presumptions of regularity. Yet it is necessary to stress that we are not dealing here with a simple municipal regulation. As the City Council recognized, "the Mayor's request to amend Regulation No. 72–12 constituted a request to amend the Implementation Plan."[13] The Implementation Plan is not merely a municipal regulation but the creature of a Federal statute with strict provisions limiting changes in approved Implementation Plans.

The Clean Air Act specifies that prior to the date on which a stationary pollution source is required to comply with an applicable implementation plan the executive of the State may apply to the Administrator of the Environmental Protection Agency to postpone the applicability of the requirement for not more than one year.[14] Upon such a request the Administrator must make specific determinations on the record after hearing that postponement of the requirement comports with the Clean Air Act. That decision of the Administrator is then subject to direct review in a United States Court of Appeals, with priority on the docket of that Court.[15] Another provision of the Act provides for "revision" in approved Implementation Plans.[16] Such revision may be made, subject to approval of the Environmental Protection Agency, to take account of any revisions in national air quality standards or the availability of "improved or more expeditious methods" of achieving compliance with such standards.[17]

█ Within this statutory framework the Environmental Protection Agency has promulgated a regulation [18] which allows a state "to defer the applicability of any portion(s) of the control strategy" (implementation plan) with respect to a stationary pollution source "unless such deferral will prevent attainment or maintenance of a national standard within the time specified in such plan."[19]

12. Complaint, Civil Action 1424–73, ¶¶ 3, 32, 33; Civil Action 1844–73, ¶ 5.

13. Report of Councilman Foster, Chairman of the Committee on Environment and Business Development, August 28, 1973. (Plaintiffs' Exhibit C.A. 1844–73).

14. 42 U.S.C. § 1857c–5(f).

15. Id.

16. 42 U.S.C. § 1857c–5(a)(2)(H); (a)(3).

17. 42 U.S.C. § 1857c–5(a)(2)(H) requires the Administrator to approve a proposed plan if
it provides for revision, after public hearings, of such plan (i) from time-to-time as may be necessary to take account of revisions of such national primary or secondary ambient air quality standard or the availability of improved or more expeditious methods of achieving such primary or secondary standard; or (ii) whenever the Administrator finds on the basis of information available to him that the plan is substantially inadequate to achieve the na-

tional ambient air quality primary or secondary standard which it implements.
42 U.S.C. § 1857c–5(a)(3) provides for approval of revisions by the Administrator:
The Administrator shall approve any revision of an implementation plan . . . if he determines that it meets the requirements of paragraph (2) [42 U.S.C. § 1857c–5(a)(2) supra] and has been adopted by the state after reasonable notice and public hearings.

18. 42 U.S.C. § 1857g(a) authorizes the Administrator to promulgate regulations for the implementation of the Act.

19. 40 C.F.R. § 51.32(f):
A State's determination to defer the applicability of any portion(s) of the control strategy with respect to such [stationary pollution] source(s) will not necessitate a request for postponement under this section unless such deferral will prevent attainment or maintenance of a national standard within the time specified in such plan: *Provided, however,* that any such

In other words, as long as long-term goals remain the same, internal revisions in the plan relating to stationary pollution sources are permitted even if they represent a temporary weakening of the plan. Under the regulation such a "deferral" is treated as a revision in the Implementation Plan rather than a "postponement" under Section 1857c–5 (f) of the statute. Plaintiffs argue that such treatment evades and renders meaningless the strict standards and review mechanism of the "postponement" provision. Implicit in Plaintiffs' position is an argument that revisions are permissible under the statute only to improve an implementation plan, not to allow a retrenchment, and that postponement is the only proper means of delaying a specified closing date for stationary pollution source. Plaintiffs' position is not totally without support, for it is supported by the statutory language and the argument that to allow "temporary" relaxation of an approved plan is not the best approach to insure that meaningful plans are adopted and goals ultimately achieved.

Plaintiffs' interpretation, however, has been rejected by two Circuit Courts of Appeals, Natural Resources Defense Council v. E. P. A., 478 F.2d 875, 886–88 (1st Cir. 1973), and Natural Resources Defense Council v. E. P. A., 483 F.2d 690, 693–694 (8th Cir. 1973). In both of these cases the Courts of Appeals held that the Administrator of the Environmental Protection Agency has broad discretion and flexibility in allowing adjustments of approved implementation plans to be treated as revisions rather than postponements. In each case the Court found it necessary to distinguish between two time periods, the period before the date set by law for the mandatory attainment of Clean Air standards (the "pre-attainment period") and the period after mandatory attainment of standards (the "post-attainment" period). Both Courts held that the "postponement" provisions of § 1857c–5(f) are the exclusive mechanism to avoid compliance with an Implementation Plan only in the post-attainment period. In the pre-attainment period, which is the current period in the District of Columbia, the Courts held that the Administrator has discretion to allow variances in Implementation Plans, without compliance with the procedures for formal "postponement" of compliance, as long as the Administrator has properly found that the variance will cease before the mandatory attainment date and will not defeat ultimate attainment of the applicable clean air standard.[20]

■ The legislative history of the Act appears to be silent on the point here in issue. In light of this, and in light of the decisions cited and the context of this case, this Court is constrained to agree that the Administrator of E.P.A. has the authority to treat certain variances in Implementation Plans as "revisions" rather than "postponements" under the Clean Air Act.

■ The effect of 40 C.F.R. § 51.-32(f)[21] in the present case is to allow treatment of the delayed closing of Incinerator No. 5 as a revision rather than a postponement in the District of Columbia Implementation Plan. As a revision the proposed delay has properly been submitted to the Regional Office of E.P.A. for review and approval.[22]

---

determination will be deemed a revision of an applicable plan under [40 C.F.R.] § 51.6.

**20.** The distinction between pre-attainment and post-attainment periods is not found in the statutory language itself, nor implicitly in the authority to allow revisions, but "as a necessary adjunct to the statutory scheme, which anticipates greater flexibility during the pre-attainment period." 478 F.2d at 887.

**21.** Note 19, supra.

**22.** 40 C.F.R. § 51.6 sets forth the procedure for securing Environmental Protection Agency approval of revisions. § 51.6(d) specifically contemplates submission of revisions for approval within sixty (60) days *after* adoption. The present revision was submitted to E.P.A. for approval on September 21, 1973. On January 11, 1974, E.P.A. published notice of the proposed revision in the Federal Register and invited comment. The

Plaintiffs have not pointed to any impropriety in the administrative handling of the proposed revision under applicable regulations. Accordingly, the Court concludes that Plaintiffs' challenge to this revision must fail.[23]

Summary judgment will be granted to Defendants.

## ADDENDUM

This matter is now before the Court on Plaintiffs' Motion to alter or amend the Order of Judgment entered herein February 20, 1974, dismissing these actions. Plaintiffs contend that the United States Court of Appeals for the District of Columbia has entered a controlling decision, Natural Resources Defense Council v. E.P.A., 154 U.S.App. D.C. 384, 475 F.2d 968 (1973), contrary to the decisions of the First and Eighth Circuits relied upon by this Court, Natural Resources Defense Council v. E.P. A., 478 F.2d 875, 886–887 (1st Cir. 1973), and Natural Resources Defense Council v. E.P.A., 483 F.2d 690, 693–694 (8th Cir. 1973). This Court was quite aware of the cited D.C. Circuit case, but agrees with Defendants that it is not in point. Our Circuit did not have before it, and has not yet decided to this date, the issues raised herein which were expressly determined by the First and Eighth Circuits, i.e. does the Administrator of E.P.A. have discretion to treat certain adjustments in approved implementation plans as "revisions" rather than "postponements" under the Clean Air Act. The D.C. Circuit dealt primarily with Section 110(e) of the Act, 42 U.S.C. § 1857c–5(e), which deals with time limits for submission of implementation plans. The Court was not presented with, and did not resolve, any question on the availability of the "revision" mechanism for adjusting an implementation plan, or the validity of 40 C.F.R. § 51.32(f).

Plaintiffs further argue that the result herein is contrary to the "non-degradation" air quality standard of Sierra Club v. Ruckelshaus, 344 F.Supp. 253 (D.D.C.1972), affirmed 412 U.S. 541, 93 S.Ct. 2770, 37 L.Ed.2d 140 (1973). There is simply no indication in the present record that continued operation of Incinerator No. 5 will cause deterioration of existing air-quality in the District of Columbia. Plaintiffs' position on each of the two points raised in the present motion is not well taken.

The Court has discovered, however, another significant decision in point. On February 8, 1974, the Fifth Circuit Court of Appeals decided Natural Resources Defense Council, Inc. v. E.P.A., 489 F.2d 390. This case was not brought to the Court's attention prior to entry of the February 20 Memorandum and Order herein. In the Fifth Circuit case, 489 F.2d at 402–403, the Court focused on the issue raised herein and earlier decided by the First and Eighth Circuits. The Court held, directly contrary to the First and Eighth Circuits, that "revisions" are not permitted to supplant "postponements" in enforcement of the Clean Air Act. The Fifth Circuit held "that the plan of the statute was to secure ambitious commitments at the planning stage, and then, by making it difficult to depart from those commitments, to assure that departures would be made only in cases of real need." (489 F.2d at 403).

Thus the issue herein has been squarely drawn by express disagreement among the Circuit Courts which have spoken to

---

period for comment expired February 11, 1974.

23. Jurisdiction over review of the Administrator's approval of implementation plans, and revisions thereto, lies exclusively in the respective Courts of Appeals. 42 U.S.C. § 1857h–5(b)(1). Accordingly, this Court has no jurisdiction over the merits of such

a revision and expresses no view thereon. Since jurisdiction herein is limited to enforcement of an applicable implementation plan, the function of this Court is at an end upon a finding that the District of Columbia and the Administrator of E.P.A. have taken the appropriate steps to revise the applicable plan and that there is therefore no non-compliance.

date. In light of the fact that the District of Columbia Circuit has not yet spoken on the controlling question of law which is open to substantial dispute, and in light of the severe consequences of an injunction herein, this Court is not disposed to alter its previous Order herein.

Upon the above considerations, it is this 12th day of March, 1974;

Ordered that Plaintiffs' Motion to Alter or Amend the Order of Judgment entered herein February 20, 1974, be and hereby is denied.