511 F.2d 809
 7 ERC 1811, 37 A.L.R.Fed. 310, 167
U.S.App.D.C. 243,
5 Envtl. L. Rep. 20,335
 METROPOLITAN WASHINGTON COALITION FOR CLEAN AIR et al.
v.
DISTRICT OF COLUMBIA et al., Appellants.
METROPOLITAN WASHINGTON COALITION FOR CLEAN AIR et al., Appellants,
v.
DISTRICT OF COLUMBIA, a Municipal Corporation.
 Nos. 74--1482, 74--1507.
 United States Court of Appeals,
District of Columbia Circuit.
 April 4, 1975.
 
 Gilbert Hahn, Jr., Washington, D.C., was on the pleadings for appellants. John R. Hailman, Washington, D.C., entered an appearance for appellants.
 C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and John C. Salyer, Asst. Corp. Counsel, Washington, D.C., were on the pleadings for appellee.
 Before WRIGHT and LEVENTHAL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants, proceeding under the citizen suit provision of the Clean Air Act[1] sued to force the closing of a municipally owned incinerator, alleging that its continued operation violated the District of Columbia's approved implementation plan.[2] The district court granted summary judgment for the defendant. Both parties filed appeals which were consolidated by order of this court. Appellant, Coalition, now seeks summary reversal of the lower court's judgment. For the reasons discussed below, we grant the motion and remand the case to the district court.
 
 
 2
 Pursuant to the Clean Air Act the Government of the District of Columbia filed an implementation plan with the Administrator of the Environmental Protection Agency on July 2, 1972. A provision of that plan called for the closing of all large solid waste incinerators with the exception of incinerator #5, which was given authorization to continue operation until July 4, 1973. The implementation plan was approved by the Administrator shortly after its submission on July 2, 1972.
 
 
 3
 On May 31, 1973, the Mayor asked the City Council to amend the plan in order to eliminate the required closing of the incinerator. The Council responded on the eve of the scheduled closing of incinerator #5 by postponing it until September 4, 1973. On that day, the Council granted a second postponement until June 30, 1974. Neither of the extensions was submitted in time to receive approval from the EPA.[3]
 
 
 4
 Appellants filed suit against the District to enforce[4] the implementation plan of July 2, 1972, which had set the July 4, 1973, closure date. The Coalition moved for a preliminary injunction and the District moved to dismiss. The district court consolidated the hearing on the preliminary injunction with the final determination on the merits,[5] and granted summary judgment for the District.[6]
 
 I.
 
 5
 The district court acknowledged that 'absent a valid revision of the plan or authorized postponement of the timetable, the Court is required to enforce the original timetable for Incinerator No. 5's compliance with the District of Columbia Air Quality Implementation Plan.'[7] It concluded, however, that the delay of the closing of the incinerator qualified as a 'revision' of the plan which did not require compliance with the stringent 'postponement' provision of the statute, 42 U.S.C. § 1857c--5(f) (1970), and applicable regulations, 40 C.F.R. § 51.32 (1974).[8] The Addendum to the opinion below indicates the trial judge's view that 'the controlling question of law' involved the 'availability of the 'revision' mechanism for adjusting an implementation plan'[9]--a question eliciting conflicting answers from the circuit courts and presently pending before the Supreme Court.[10] We venture no opinion on this important issue for, assuming the applicability of the revision mechanism, we find that there has been no 'valid revision' of the District's implementation plan.
 
 
 6
 The district court noted that '(a)s a revision the proposed delay has properly been submitted to the Regional Office of E.P.A. for review and approval.'[11] However, at no time has EPA approved any of the delays endorsed by the City Council.[12] Implicit in the lower court's grant of summary judgment to the District was the assumption that the City Council's adoption of the 'proposed delay' alone was sufficient to effectuate the revision thereby staying the closing of the incinerator.[13] Our analysis of the statute and regulations indicates that this assumption is erroneous and that EPA approval of a proposed revision is necessary to relax the implementation schedule.[14]
 
 
 7
 The First Circuit, in a decision relied upon by the district court, concluded that '(r)evisions are not to be considered part of a plan until approved by the Administrator.'[15] This conclusion has been expressly endorsed by the Eighth and Ninth Circuits and impliedly adopted by the Second Circuit.[16]Although the revision regulations, unlike the postponement regulations, contain no express provision directing this result,[17] the requirement of EPA approval is a necessary consequence of the limited nature of the revision exception to the more stringent postponement criteria. The Administrator's regulations prohibit resort to the revision procedures whenever the state's proposed deferral of any portion of the control strategy 'will prevent attainment or maintenance of a national standard within the time specified in such plan.'[18] This restriction reflects the limited scope of the Administrator's discretion to utilize the revision mechanism to authorize individual variances.[19] If unilateral state action served to relax its implementation schedule pending EPA approval, and state could sidestep the crucial limitations on the revision procedure and undermine the national program of air quality improvement. Under the regulations, a revision need not even be sent to EPA until 60 days after its adoption and agency review can be expected to require additional time after receipt.[20] A requirement of EPA approval prior to effectuation of any proposed revision is thus essential to prevent critical, irreparable delays which the Administrator is not empowered to authorize under the less rigorous revision provisions or which do not meet the standards for revision.
 
 
 8
 In ruling on a motion for summary reversal, we must consider whether the movant has met his heavy burden of establishing 'that his remedy is proper and that the merits of his claim so clearly warrant relief as to justify expedited action.'[21] In this case, the movant established a prima facie case that the pertinent implementation plan, the July 2, 1972, plan, was not being adhered to by the District. Certainly when such an unrebutted showing is made, the remedy of summary reversal lies to redress an adverse judgment entered against the plaintiff.
 
 
 9
 We do not hold that the court should have granted judgment for appellants, but only that this is a live controversy which is not resolved by the City Council's submission of proposed revisions to the EPA.
 
 
 10
 On remand the court should consider any additional factors which may have arisen during the intervening period. The fact that the District was once in violation of the Act does not necessarily mean that it cannot cure that violation short of closing down the stationary source. Appellee has called to our attention various proposals made by the EPA to permit continued operation of the incinerator. While we do not reach the question of the validity of these proposed modifications, the lower court should consider any changes that are made in determining whether there is a violation.
 
 II.
 
 11
 The District has raised three contentions in opposition to this appeal: First, that insufficient notice was given by the Coalition; Second, that the Coalition lacked standing to bring this action; and Third, that the Coalition failed to join a necessary party, the Administrator.
 
 
 12
 Under the citizen suit provision of the Act, 42 U.S.C. § 1857h--2, the Coalition was required to give sixty days notice before filing suit in order to give the administrative enforcement office an opportunity to act on the alleged violation and to allow the District voluntarily to comply with the implementation plan.[22] Although the Coalition originally failed to provide proper notice, it cured this defect by filing a second law suit after giving notice as required by the statute to the Administrator and the District of Columbia. This notice was given by serving copies of the complaint filed in the first suit on those parties required by statute and regulation to receive such notice.[23] The District Court consolidated the two law suits into one action and properly ruled that sufficient notice had been given.[24]
 
 
 13
 The standing argument presents no barrier to plaintiffs' action. Under the Clean Air Act's citizen suit provision, the general requirements for standing have been relaxed to permit suits by 'any citizen.' In this way citizens are recruited to serve as private attorneys-general to facilitate enforcement of the act in the face of official inaction.[25] Appellants responded to this Congressional invitation to invoke the judicial process and assert the public interest. The question of whether there would have been standing under this complaint had the action been for private damages is not at issue. It is clear appellants had standing under the statute to represent the public.[26]
 
 
 14
 The District's last contention is that failure to join the Administrator resulted in the absence of a necessary party. This would be true only if it were necessary to sue the Administrator in order to force implementation of the plan. The citizen suit provision contemplates actions against the Administrator where he fails to perform a non-discretionary act. Alternatively, the citizen, after giving sixty days notice to the Administrator, can proceed directly against the violator. When the plaintiff elects this later course, the Administrator has the right to intervene in the suit, but he is not required to be a participant in such litigation and his absence does not render the action infirm.
 
 
 15
 Since the district court treated the adoption of the revisions by the Council as staying the required closure despite the absence of approval by the EPA, we must reverse the judgment that has been entered. We remand for further consideration of this case in light of our opinion.
 
 
 16
 So ordered.
 
 
 
 [1]
 42 U.S.C. § 1857h--2 (1970)
 
 
 [2]
 42 U.S.C. § 1857c--5 (1970)
 
 
 [3]
 Both Council actions were taken within hours of the time set for closing
 
 
 [4]
 42 U.S.C. § 1857h--2(a), (f) (1970) provide for suits to enforce the timetable of compliance in an implementation plan
 (a) Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf--
 (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.
 The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be.
 (f) For purposes of this section, the term 'emission standard or limitation under this chapter' means--
 (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard, or
 (2) a control or prohibition respecting a motor vehicle fuel or fuel additive,
 which is in effect under this chapter (including a requirement applicable by reasons of section 1857f of this title) or under an applicable implementation plan.
 
 
 [5]
 Fed.R.Civ.P. 65(a)(2)
 
 
 [6]
 Metropolitan Washington Coalition for Clean Air v. District of Columbia, 373 F.Supp. 1089 (D.D.C.1974)
 
 
 [7]
 Id. at 1092
 
 
 [8]
 See id. at 1094--95. The postponement regulations, 40 C.F.R. § 51.32 (1974), and the revision regulations, 40 C.F.R. § 51.6 (1974), provide:
 § 51.32 Request for 1-year postponement.
 (a) Pursuant to section 110(f) of the Act, the Governor of a State may request, with respect to any stationary source or class of moving sources, a postponement for not more than 1 year of the applicability of any portion of the control strategy.
 (b) Any such request regarding sources located in an interstate region shall show that the Governor of each State in the region has been notified of such request.
 (c) Any such request shall clearly identify the source(s) and portion(s) of the control strategy which are the subject of such request and shall include information relevant to the determinations required by section 110(f) of the Act.
 (d) A public hearing will be held, before the Administrator or his designee, on any such request.
 (e) No such request shall operate to stay the applicability of the portion(s) of the control strategy covered by such request.
 (f) A State's determination to defer the applicability of any portion(s) of the control strategy with respect to such source(s) will not necessitate a request for postponement under this section unless such deferral will prevent attainment or maintenance of a national standard within the time specified in such plan: Provided, however, That any such determination will be deemed a revision of an applicable plan under § 51.6. (36 FR 22398, Nov. 25, 1971, as amended at 38 FR 15958, June 19, 1973)
 § 51.6 Revisions.
 (a) The plan shall be revised from time to time, as may be necessary, to take account of:
 (1) Revisions of national standards.
 (2) The availability of improved or more expeditious methods of attaining such standards, such as improved technology or emission charges or taxes, or
 (3) A finding by the Administrator that the plan is substantially inadequate to attain or maintain the national standard which it implements.
 (b) The plan shall be revised within 60 days following notification by the Administrator under paragraph (a) of this section, or by such later date prescribed by the Administrator after consultation with the State.
 (c) The plan may be revised from time to time consistent with the requirements applicable to implementation plans under this part.
 (d) Any revision of any regulation or any compliance schedule pursuant to paragraph (c) of this section shall be submitted to the Administrator no later than 60 days after its adoption.
 by paragraphs (a) and (d) of this section shall be identified and described in the next semiannual report required by § 51.7.
 (f) Any revision shall be submitted only after any applicable hearing requirements of § 51.4 have been satisfied. (37 FR 22398, Nov. 25, 1971, as amended at 37 FR 26312, Dec. 9, 1972)
 
 
 [9]
 See 373 F.Supp. at 1095--96
 
 
 [10]
 The scope of the EPA's authority to grant extensions in implementation plan deadlines has yet to be resolved. 42 U.S.C. § 1857c--5(f) gives the Administrator the authority to permit states to postpone compliance for up to one year provided that a showing is made that the source is unable to comply despite good faith efforts, that all alternative procedures capable of reducing the impact of the source on public health have been implemented, and that continued operation of the source is essential to national security or the public health or welfare
 When those conditions are not met, the Administrator has attempted to classify certain postponements as revisions of the underlying plan. See 40 C.F.R. § 51.32(f) (1974) (set forth in note 8 supra); 42 U.S.C. § 1857c--5(a)(2) & (3) (1970). Four circuits have approved the idea of revisions based on standards less rigid than the subsection (f) standards discussed above. See Natural Resources Defense Council, Inc. v. EPA, 507 F.2d 905 (9th Cir. 1974); Natural Resources Defense Council, Inc. v. EPA, 494 F.2d 519 (2d Cir. 1974); Natural Resources Defense Council, Inc. v. EPA, 483 F.2d 690 (8th Cir. 1973); Natural Resources Defense Council, Inc. v. EPA, 478 F.2d 875 (1st Cir. 1973).
 The Fifth Circuit has taken the opposite approach and ruled that the Administrator cannot accept plans which relax the subsection (f) revision requirements. Natural Resources Defense Council, Inc. v. EPA, 489 F.2d 390, 401 (5th Cir.), cert. granted sub nom, Train v. Natural Resources Defense Council, Inc., 419 U.S. 823, 95 S.Ct. 39, 42 L.Ed.2d 46 (1974). The Supreme Court heard oral argument on January 15, 1975. 43 U.S.L.W. 3402 (January 21, 1975).
 
 
 [11]
 373 F.Supp. at 1094
 
 
 [12]
 See Motion of Appellants for Summary Reversal at 3 n. 2. In fact on August 5, 1974, EPA denied a proposed revision adopted by the City Council on June 25, 1974. The denial was premised on the inability of the Administrator to grant revisions applicable to the post-attainment period. The post-attainment period commences three years after the approval of the initial plan (here the period would commence in July, 1975) and the District's proposed revision sought to delay the closing of the incinerator until June 30, 1977. See Letter from Daniel J. Snyder, III, Regional Administrator, EPA, to William McKinney, Director, District of Columbia Dept. of Environmental Services, Aug. 5, 1974. (Exhibit C to Motion of Appellants for Summary Reversal)
 
 
 [13]
 Appellants raised the need for EPA approval prior to the effectuation of a proposed revision in the district court. See Plaintiff's Motion to Alter or Amend Judgment, Feb. 28, 1974, at 1; Points and Authorities in Support of Plaintiff's Motion to Alter or Amend Judgement, Feb. 28, 1974, at 3--4 (citing First and Eighth Circuit cases relied upon in the district court's opinion)
 The district court's Addendum of March 12, 1974, denying the motion to alter or amend does not address the question of the need for EPA approval prior to implementation of the revision.
 
 
 [14]
 We do not address the question whether a revision that accelerates the compliance schedule requires EPA approval prior to taking effect
 
 
 [15]
 Natural Resources Defense Council, Inc. v. EPA, 478 F.2d 875, 886, 887, 888 (1st Cir. 1973)
 
 
 [16]
 See Natural Resources Defense Council, Inc. v. EPA, 507 F.2d 905 (9th Cir. 1974) (The court noted that variances are 'subject always to EPA approval' and emphasized that 'no variance is operative without EPA approval.' 'Pending final approval of the variance by the EPA, the individual source is committed to the emissions standards enumerated in the original or previously revised state plan.'); Natural Resources Defense Council, Inc. v. EPA, 494 F.2d 519 (2d Cir. 1974) (adopting the First Circuit's approach); Natural Resources Defense Council, Inc. v. EPA, 483 F.2d 690, 693--94 (8th Cir. 1974) (adopting the First Circuit approach and the remedy outlined in the First Circuit's opinion specifying that the state plan cannot permit the granting of any variance not first approved by the Administrator)
 
 
 [17]
 Compare 40 C.F.R. § 51.6 (1974) with 40 C.F.R. § 51.32(e) (1974). The provisions are set forth in note 8 supra
 
 
 [18]
 See 40 C.F.R. § 51.32(f) (1974) (set forth in note 8 supra)
 
 
 [19]
 See Natural Resources Defense Council, Inc. v. EPA, 507 F.2d 905 (9th Cir. 1974); Natural Resources Defense Council, Inc. v. EPA, 478 F.2d 875, 887 (1st Cir. 1973)
 The district court appeared to recognize these limitations for it concluded that 'the Administrator of E.P.A. has the authority to treat certain variances in Implementation Plans as 'revisions' rather than 'postponements," noting that 'the Administrator has discretion to allow variances . . . as long as the Administrator has properly found that the variance will cease before the mandatory attainment date and will not defeat ultimate attainment of the applicable clean air standard.' 373 F.Supp. at 1094 (emphasis added). What the court overlooked was that here there had been no finding by the Administrator that the proposed variance could properly be treated as a revision.
 
 
 [20]
 See 40 C.F.R. § 51.6(d) (1974). In the present case the second proposed delay was submitted to EPA for approval on Sept. 4, 1973. On Jan. 11, 1974, EPA published a notice of the proposed revision seeking comments by Feb. 11, 1974. EPA did not rule on the proposal prior to June 30, 1974, the date to which the District proposed to extend the closing of the incinerator. EPA has denied the District's third proposed delay. See note 12 supra
 
 
 [21]
 United States v. Allen, 133 U.S.App.D.C. 84, 85, 408 F.2d 1287, 1288 (1969); See Vietnam Veterans Against War v. Morton, 164 U.S.App.D.C. 391, 394, 506 F.2d 53, 56 (1974)
 
 
 [22]
 See S.Rep.No.1196, 91st Cong., 2nd Sess. 37 (1970), U.S.Code Cong. & Admin.News 1970, p. 5356
 
 
 [23]
 373 F.Supp. at 1092
 
 
 [24]
 Id
 
 
 [25]
 See S.Rep.No.1196, supra note 22, at 36--39, U.S.Code Cong. & Admin.News 1970, p. 5356
 
 
 [26]
 We reject the district court's conclusion that the plaintiff must allege an 'injury in fact' in order to establish the requisite standing to pursue this action. 377 F.Supp. at 1092--93. As the Supreme Court has noted, 'where a dispute is otherwise justiciable, the question whether the litigant is a 'proper party to request adjudication of a particular issue' . . . is one within the power of Congress to determine.' Sierra Club v. Morton, 405 U.S. 727, 732, n. 3, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). Here Congress has determined that 'any citizen' is a proper party. The citizen suit provision of the Clean Air Act 'was designed to provide a procedure permitting any citizen to bring an action directly against polluters violating the performance standards and emission restrictions imposed under the law or against the Administrator grounded on his failure to discharge his duty to enforce the statute against polluters.' Natural Resources Defense Council, Inc. v. Train, 166 U.S.App.D.C. ---, 510 F.2d 692 at 700 (1974)