639 F.2d 802
 16 ERC 1430, 205 U.S.App.D.C. 280, 11
Envtl. L. Rep. 20,171
 METROPOLITAN WASHINGTON COALITION FOR CLEAN AIR, Capitol
View Property Owners Association, Inc. et al., Appellants,
v.
The DISTRICT OF COLUMBIA, a Municipal Corporation et al.
METROPOLITAN WASHINGTON COALITION FOR CLEAN AIR, Capitol
View Property Owners Association, Inc., William O.
Woodson and Gordon W. Anderson, Appellants,
v.
The DISTRICT OF COLUMBIA, a Municipal Corporation et al.
 Nos. 78-1298, 78-1299.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 9, 1979.
Decided Jan. 21, 1981.
 
 Philip W. Amram, Washington, D. C., with whom Gilbert Hahn, Jr. and Leonard J. Bucki, Philadelphia, Pa., were on the brief, for appellants.
 John C. Salyer, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, and Richard G. Wise, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellees.
 Before TAMM and ROBINSON, Circuit Judges, and GESELL, District Judge.*
 Opinion Per Curiam.
 
 PER CURIAM:
 
 1
 Pursuant to the Clean Air Act, the District of Columbia, in July of 1972, filed an implementation plan with the Environmental Protection Agency (EPA). One provision of the plan called for the closing of all large solid-waste incinerators except Incinerator No. 5, which was to be closed on July 4, 1973. The plan was quickly approved by EPA, but Incinerator No. 5 was never shut down. On July 3, 1973, the District of Columbia Council authorized its operation until September, 1973; in September, the Council voted to permit its operation until June, 1974; and in that month the Council extended its operation until June, 1977.
 
 
 2
 Meanwhile, the litigation forerunning this appeal proceeded in parallel fashion. On July 16, 1973, appellants filed suit to enjoin the continued operation of Incinerator No. 5. The District Court dismissed the suit,[1] but this court summarily reversed the dismissal.[2] The District Court then entered an order permitting operation of the incinerator pending EPA action on a proposed revision of the implementation plan.[3] That order was appealed but, following EPA approval of the revised plan, this court dismissed the appeal as moot and directed dismissal of the litigation.[4] The present appeal is from a later order[5] denying appellants an award of attorneys' fees and costs.
 
 
 3
 The District Court acknowledged that unsuccessful parties may be allowed attorneys' fees under the citizen-suit provision of the Clean Air Act.[6] It found such an allowance inappropriate in this case, however, largely because it believed that the outcome of the litigation was "relevant ... even though not determinative."[7] The court also concluded that the suit was not, in any event, in the public interest since EPA ultimately found that operation of Incinerator No. 5 did not endanger the public health, "(p)laintiffs' litigation could not have tangibly benefited" the public.[8] The court similarly held that the suit "had questionable legitimacy" because EPA was already considering the proposed revisions of the plan, and thus "(p) laintiffs' efforts in this litigation did not serve to expedite the Administrator's decision...."[9]
 
 
 4
 We think the District Court incorrectly focused its attention on the outcome and practical effects of the litigation, to the exclusion of a more relevant consideration: whether the suit was of the type that Congress intended to encourage when it enacted the citizen-suit provision. Congress then believed that the Federal Government had been "restrained"[10] and "notoriously laggard"[11] in exacting obedience to pollution control requirements; it was even suggested that government simply lacked the capacity to effectively police compliance.[12] The purpose of the citizen-suit provision, then, was to aid enforcement of the Act[13] while "motivat(ing) governmental agencies charged with the responsibility to bring enforcement and abatement proceedings."[14] To this end, courts were empowered to award fees specifically, "without regard to the outcome of the litigation"[15] whenever such an award was deemed to be "in the public interest."[16] Quite obviously, the legislature, when it called for citizen-suits, considered a fee recovery to be consonant with the public interest whenever the underlying suit was a prudent and desirable effort to achieve an unfulfilled objective of the Act. The attorneys' fee feature was offered as an inducement to citizen-suits, which Congress deemed necessary; and if the hope Congress had for such suits is to become a reality, decisions on fee-allowance cannot make wholesale substitutions of hindsight for the legitimate expectations of citizen plaintiffs.
 
 
 5
 From this perspective, the District Court accorded the public interest too narrow a scope. The court might, for example, have found that even this so-called unsuccessful suit demonstrated to "the public a record of inaction and action delayed on the part of the District of Columbia Government in implementing the Clean Air Act."[17] At any rate, none of the factors the court relied on was pertinent to whether, in light of what was known in 1973 when the suit was instituted, the action was of the type that Congress sought to encourage when it authorized awards of attorneys' fees.
 
 
 6
 Appellants made out a prima facie case that the District was not adhering to its implementation plan.[18] When the litigation began, both EPA's power to authorize plan revisions and the procedures there requisite were in doubt.[19] EPA's finding that operation of Incinerator No. 5 posed no health hazard even if relevant, given the District's repeated deferrals of the deadline set in its announced plan was not made until May of 1976,[20] almost three years after suit was brought. Thus, there may have been in 1973 a well-founded expectation that the suit would bring about a more timely compliance with the plan, and in that fashion an observance of the Act.
 
 
 7
 We conclude that the District Court, by confining itself to a post hoc exploration for actual and tangible effects of the litigation, departed from the fundamental purpose of the citizen-suit provision. We accordingly reverse the order appealed from and remand the case to the District Court for further proceedings consistent with this opinion.
 
 
 8
 So ordered.
 
 
 9
 GESELL, District Judge, dissents.
 
 
 
 *
 Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976)
 
 
 [1]
 Metropolitan Washington Coalition for Clean Air v. District of Columbia, 373 F.Supp. 1089 (D.D.C.1974), rev'd, 167 U.S.App.D.C. 243, 511 F.2d 809 (1975)
 
 
 [2]
 Metropolitan Washington Coalition for Clean Air v. District of Columbia, 167 U.S.App.D.C. 243, 511 F.2d 809 (1975)
 
 
 [3]
 Metropolitan Washington Coalition for Clean Air v. District of Columbia, Civ. Nos. 1424-73, 1844-73 (D.D.C. July 28, 1975)
 
 
 [4]
 Metropolitan Washington Coalition for Clean Air v. District of Columbia, Nos. 75-1749, 75-1750 (D.C.Cir. June 4, 1976)
 
 
 [5]
 Metropolitan Washington Coalition for Clean Air v. District of Columbia, Civ. No. 78-1299 (D.D.C. Jan. 23, 1978). Shortly after oral argument on this appeal, we remanded the record to the District Court for a statement of the reasons underlying the order refusing fees and costs. Metropolitan Washington Coalition for Clean Air v. District of Columbia, Nos. 75-1749, 75-1750 (D.C.Cir. Mar. 8, 1979). The requested statement was prepared and filed, Metropolitan Washington Coalition for Clean Air v. District of Columbia, Civ. No. 78-1299 (D.D.C. Apr. 11, 1980), and after an inadvertent delay was transmitted to this court
 
 
 [6]
 Metropolitan Washington Coalition for Clean Air v. District of Columbia (statement of reasons), supra note 5, at 5. The citizen-suit provision, 42 U.S.C. § 7607(f) (Supp. II 1978), specifies that "the court, in subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert fees) to any party, whenever the court determines that such award is appropriate." See, e. g., Citizens Ass'n of Georgetown v. Washington, 383 F.Supp. 136 (D.D.C.1974), rev'd on other grounds, 175 U.S.App.D.C. 356, 535 F.2d 1318 (1976)
 
 
 [7]
 Metropolitan Washington Coalition for Clean Air v. District of Columbia (statement of reasons), supra note 5, at 6
 
 
 [8]
 Id. at 8
 
 
 [9]
 Id. at 11
 
 
 [10]
 S.Rep.No. 1196, 91st Cong., 2d Sess. 36 (1970)
 
 
 [11]
 Id. at 37
 
 
 [12]
 116 Cong.Rec. 33104 (1970) (remarks of Senator Hart)
 
 
 [13]
 S.Rep.No. 1196, 91st Cong., 2d Sess. 3 (1970)
 
 
 [14]
 Id. at 36
 
 
 [15]
 Id. at 65
 
 
 [16]
 Id
 
 
 [17]
 Citizens Ass'n of Georgetown v. Washington, supra note 6, 383 F.Supp. at 145
 
 
 [18]
 See Metropolitan Washington Coalition for Clean Air v. District of Columbia, supra note 2, 167 U.S.App.D.C. at 247, 511 F.2d at 813
 
 
 [19]
 See id. at 245-247, 511 F.2d at 811-813
 
 
 [20]
 See 41 Fed.Reg. 19303 (1976)