484 F.2d 1331
 5 ERC 1891, 3 Envtl. L. Rep. 20,803
 NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Petitioners,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent.
NATURAL RESOURCES DEFENSE COUNCIL, INC., and Project on
Clean Air, et al., Petitioners,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent.
 Nos. 72-1219, 72-1224.
 United States Court of Appeals,
First Circuit.
 Submitted July 16, 1973.
Decided Oct. 1, 1973.
 
 Richard E. Ayres, New York City, and Thomas B. Arnold, Boston, Mass., for petitioners.
 Thomas C. Lee, Atty., Dept. of Justice, with whom Kent Frizzell, Asst. Atty. Gen., Edmund B. Clark, and Martin Green, Attys., Dept. of Justice, were on brief, for respondent in case 72-1219.
 John P. Hills, Atty., Dept. of Justice, with whom Kent Frizzell, Asst. Atty. Gen., Edmund B. Clark, and Martin Green, Attys. Dept. of Justice, were on brief, for respondent in case 72-1224.
 Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.
 LEVIN H. CAMPBELL, Circuit Judge.
 
 
 1
 Petitioners in Natural Resources Defense Council, Inc. v. Environmental Protection Agency, 478 F.2d 875 (1st Cir. 1973), now request this court to award them attorneys' fees as well as costs against the Environmental Protection Agency [EPA] for their efforts in obtaining orders requiring EPA to comply with certain of its obligations under the Clean Air Amendments of 1970, 42 U.S.C. Sec. 1857c-5 et seq. We hold that petitioners are entitled to recover reasonable attorneys' fees and costs.
 
 
 2
 Traditionally, a prevailing party has received costs but not attorneys' fees. Compare Ehrenzweig, Reimbursement of Counsel Fees and the Great Society, 54 Calif.L.Rev. 792 (1966), McCormick, Counsel Fees and Other Expenses of Litigation as an Element of Damages, 15 Minn.L.Rev. 619 (1931), and Posner, An Economic Approach to Legal Procedure and Judicial Administration, 2 J. Legal Studies 399, 428, 437 (1973) with Goodhart, Costs, 38 Yale L.J. 849 (1929) and Note, Distribution of Legal Expenses Among Litigants, 49 Yale L.J. 699 (1940). Moreover, sovereign immunity would prevent a court, without congressional consent, from awarding even costs against the federal government or one of its agencies. Only in 1966 did Congress, by statute of general application, waive immunity from conventional costs; but the broad waiver still does not extend to attorneys' fees. 28 U.S.C. Sec. 2412, infra; United States v. Chemical Foundation, Inc., 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131 (1926); Cassata v. Federal Savings & Loan Insurance Corp., 445 F.2d 122 (7th Cir. 1971).
 
 
 3
 An early judicially-created exception to the no-fees rule was that attorneys' fees might be taxed to a private party who had sued or defended in bad faith. The award was to punish frivolous or ill-motivated litigation. See, e. g., Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Comment, The Allocation of Attorney's Fees After Mills v. Electric Auto-Lite Co., 38 U.Chi.L.Rev. 316, 317-23 (1971). Another exception was made in equity proceedings where a plaintiff recovered, through the litigation, a fund in which others were entitled to share. Costs "as between solicitor and client" were allowed to be paid from the fund not to punish the loser, but to prevent unfair advantage to nonlitigant beneficiaries. See, e. g., Trustees v. Greenough, 105 U.S. 527, 532, 26 L.Ed. 1157 (1882). Cf. Philadelphia v. Chas. Pfizer & Co., 345 F.Supp. 454, 482-483 (S.D.N.Y.1972).
 
 
 4
 Building upon the "fund" rationale, courts allowed attorneys' fees in other situations where to do so resulted in a more equitable allocation of the costs of suit among all who benefitted. See, e. g., Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (plaintiff's victory, in consequence of stare decisis, established the claims of fourteen other trusts pertaining to the same bonds; fees were assessed against the bonds.) Cf. Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv.L.Rev. 658 (1956). Recently the notion of spreading the litigation costs equitably among all the beneficiaries has been coupled with that of encouraging suits which promote the public interest.[1] Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L. Ed.2d 1263 (1968); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972); Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.1972). When private litigation vindicates a significant public policy and, at the same time, creates a widespread benefit, policy today favors awarding attorneys' fees against a party who exists to serve or represent the interests of all those benefitted. Thus in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), a corporation was made to shoulder the cost of litigation that benefitted all shareholders and simultaneously supported the policy of the securities laws. In Hall v. Cole, 412 U. S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), a union was made to pay the attorneys' fee of disappointed union office seekers who had sued the union; the plaintiffs' victory aided the entire membership by furthering union democracy. But cf. Bradley v. School Board, 472 F. 2d 318 (4th Cir. 1972), cert. granted, 412 U.S. 937, 93 S.Ct. 2773, 37 L.Ed.2d 396 (1973). While the above cases do not go so far as to exact attorneys' fees from an agency of the federal government, courts have often awarded fees against state agencies or officials. Ojeda v. Hackney, 452 F.2d 947 (5th Cir. 1972); Taylor v. Perini, 359 F.Supp. 1185 (N.D. Ohio 1973) (civil rights); La Raza Unida v. Volpe, 57 F.R.D. 94, 101-102 n. 11 (N.D.Cal.1972) (environmental protection); Sims v. Amos, 340 F.Supp. 691, 694 n. 8 (M.D.Ala.1972) (reapportionment); NAACP v. Allen, 340 F.Supp. 703, 708, 710 n. 10 (M.D.Ala.1972) (desegregation). See also Note, Allowance of Attorney Fees in Civil Rights Litigation Where the Action is not Based on a Statute Providing for an Award of Attorney Fees, 41 Cinn.L.Rev. 405 (1972).
 
 
 5
 In the present case (putting aside for the moment the issue of sovereign immunity) the principles mentioned favor an award of attorneys' fees against the EPA. Petitioners have usefully championed the policy of the Clean Air Amendments of 1970, 42 U.S.C. Sec. 1857c-5 et seq., to "clear the air." They have sought to compel strict compliance by the EPA with legislation the purpose of which is to "speed up, expand, and intensify the war against pollution in the United States with a view to assuring that the air we breathe throughout the nation is wholesome once again." H.R. Rep. No. 91-1146, 91st Cong., 2d Sess. 2 (1970); 1970 U.S.Code Cong. & Admin. News 5356. Congress has, indeed, shown a desire to pursue its goal with the assistance of such private litigants.[2] In the House Report just quoted the "regrettably slow" progress in controlling air pollution is blamed on a scarcity of skilled personnel available to enforce control measures and on a lack of aggressiveness by EPA's predecessor agency in enforcing the law. The public suit seems particularly instrumental to the statutory scheme when against the EPA itself, for only the public-certainly not the polluter-has the incentive to complain if the EPA falls short in one or another respect; yet the lack of measurable interest on the part of any individual member of the public, and the difficulties inherent in complex litigation in a rapidly developing field of law, make the economics of citizen suits a serious problem.
 
 
 6
 In any event, petitioners have activated traditional adversary machinery for bringing issues before a court. As a result, policies of the EPA have been corrected and others, upheld, have been removed from the arena of dispute. Presumptively the public has benefitted- not only in Rhode Island and Massachusetts but nationally, as neither air pollution nor the movement of citizenry respect state boundaries, and some of the legal principles at issue have national as well as regional import. Petitioners have thus helped to enforce, refine and clarify the law. They can be said to have assisted the EPA in achieving its statutory goals.
 
 
 7
 Under the circumstances it seems fair and sensible that the EPA should be taxed for petitioners' reasonable costs and attorneys' fees. The EPA has been assigned by Congress the task of supervising pollution control. It handles the public funds appropriated for that purpose. To allocate petitioners' reasonable costs and attorneys' fees to it is to spread them ultimately among the taxpaying public, which receives the benefits of this litigation. The EPA stands here in the same relation to the citizen as did the corporation in Mills to its shareholders and the union in Hall to its members. See Comment, The Allocation of Attorney's Fees After Mills v. Electric Auto-Lite Co., 38 U.Chi.L.Rev. 316, 329-36 (1971).
 
 
 8
 Sovereign immunity, however, poses a problem that was not present in Mills or Hall. Prior to 1966 the controlling general statute, 28 U.S.C. Sec. 2412, provided flatly that "[t]he United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress." 62 Stat. 973 (1948). This was consistent with the Supreme Court's earlier formulation in United States v. Chemical Foundation, Inc., supra, 272 U.S. at 20, 47 S.Ct. at 8 that "[t]he general rule is that, in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses." The Court there held that officials of the United States could not, by the act of bringing suit for the government, waive its sovereign immunity against the imposition of costs and fees. Only Congress could do so.
 
 
 9
 Congress liberalized Sec. 2412 in 1966. It now provides:
 
 
 10
 "Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against . . . any agency . . . of the United States . . . in any court having jurisdiction of such action . . . ."
 
 
 11
 The intent, as stated in the House of Representatives committee report, H.R. Rep. No. 89-1535, 89th Cong., 2d Sess. (1966), was to provide for fair and uniform treatment as between the government and a private litigant: as matters had stood, the United States, if it prevailed, could collect costs, but the citizen, if he prevailed, could not. The House committee report concluded:
 
 
 12
 "Apparently the present inequality is related to a governmental advantage derived from the principle favoring immunity of the sovereign from suit. Under modern conditions, there is no reason for this advantage when the law provides for suit against the Government." 1966 U.S.Code Cong. & Admin. News 2528.
 
 
 13
 Nonetheless, the blanket waiver did not extend to attorneys' fees. The Seventh Circuit has since held that when Congress is otherwise silent courts still may not award attorneys' fees against the government. Cassata v. Federal Savings & Loan Insurance Corp., supra. The history of Sec. 2412 reflects, it is true, a strong movement by Congress toward placing the federal government and civil litigants on a completely equal footing.[3] Yet we may not ignore its plain wording. To award attorneys' fees against a governmental agency, we must first find that Congress has given specific statutory sanction. Here, we find such sanction in the language of the Clean Air Amendments themselves.
 
 
 14
 The Amendments Sec. 304(d), 42 U.S.C. Sec. 1857h-2(d),[4] expressly authorize the award of attorneys' fees in any suit brought pursuant to Sec. 304(a), 42 U.S.C. Sec. 1857h-2(a). Section 304(a) allows any citizen to commence suit, without regard to the amount in controversy, "against the Administrator [of the EPA] where there is alleged a failure of the Administrator to perform any act or duty under [the Amendments] which is not discretionary with the Administrator." The provision would aptly cover this case, the essence of which is the claim that the Administrator failed to perform his duty with respect to the review and approval of state implementation plans.
 
 
 15
 The difficulty is that Sec. 304 on its face deals only with litigation in the District Court. This case was brought pursuant to Sec. 307, 42 U.S.C. Sec. 1857h-5(b)(1), providing that "[a] petition for review of the Administrator's action in approving or promulgating any implementation plan . . . may be filed only in the United States Court of Appeals for the appropriate circuit." If petitions under Sec. 307 are not actions brought pursuant to Sec. 304(a), then the attorneys' fee authorization in Sec. 304(d) would not be available as an exception to 28 U.S.C. Sec. 2412. On the other hand, if the enabling provisions of Sec. 304(a) also apply to actions under Sec. 307, attorneys' fees are specifically allowed.[5] We must decide between these alternatives.[6]
 
 
 16
 While the statutory language is confusing, both common sense and the legislative history lead us to conclude that a petition for review is to be regarded as an action pursuant to Sec. 304(a). Section 307 designates the forum, Getty Oil Co. (Eastern Operations) v. Ruckelshaus, 467 F.2d 349 (3d Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L. Ed.2d 256 (1973); it goes no further. The authorization for, and conditions of, suit are contained in Sec. 304(a). The legislative history reveals that Sec. 307 does no more than direct that some proceedings must be brought in the circuit courts.
 
 
 17
 Section 307 originated in the Senate; the House version required all suits to be brought in the district court. 1970 U.S.Code Cong. & Admin.News 5389. The Senate committee wanted to consolidate review of implementation plans in the circuits because many plans were regional or even national in scope, and numerous suits in many districts might be avoided by requiring a single suit in a central forum. S.Rep. No. 91-1196, 91st Cong., 2d Sess. 41 (1970). The committee also believed that requiring implementation plans to be challenged, if at all, only in the circuit courts would "maintain the integrity of the time sequences provided throughout the Act." Id. Since statutory goals were to be achieved within three years of the approval of the implementation plan, it was important to conserve time by eliminating the otherwise normal first step in the judicial process. Challenges to other acts of the Administrator, and enforcement suits brought against polluters, were left to the district courts because delay and disparate initial decisions would not present serious obstacles.
 
 
 18
 Neither reason for directing some cases to the circuit courts indicates a congressional desire to make the allowability of attorneys' fees depend on the forum of the suit. Indeed, some of the changes the Senate bill underwent in Conference Committee reflect the opposite desire. The original provision had specified that "[a]ny interested person may file a petition . . . for review" of the implementation plans in the circuit courts. While "interested person" is equivocal as to who has standing to sue, the Senate committee report, S. Rep. No. 91-1196, 91st Cong., 2d Sess. 41 (1970), noted that the bill would protect the right of "those who seek to protect the public interest" to bring an action challenging an implementation plan. This effectively would have repeated the universal standing provision of Sec. 304(a). When the Conference Committee reported out the bill, the Senate's standing provision was missing. The Conference Committee apparently contemplated that the standing provisions of Sec. 304(a) would be applicable to Sec. 307 suits: the report states that Sec. 307 "specif[ies] forums for judicial review of certain actions . . .provided for under the Act and the proposed amendments." [Emphasis added] 1970 U.S. Code Cong. & Admin.News 5389. Other sections "provided for" the review; Sec. 307 merely specified a forum. The section providing for review of actions of the Administrator is Sec. 304(a), and since Sec. 304(a) specified that standing was universal, there was no need to repeat the allowance in Sec. 307. Similarly, Sec. 304 provided for attorneys' fees where appropriate, and there was no need to repeat the provision in Sec. 307.
 
 
 19
 This conclusion as to the scope of Sec. 304(a) is also supported by the legislative history of the inclusion in Sec. 304(a) of a provision for citizen suits without any requirement that the plaintiff be a person aggrieved. This provision, like Sec. 307, originated in the Senate. According to the Senate committee report, citizen suits would be an invaluable aid in the enforcement of pollution control standards once they had been promulgated. The committee realized that federal or state enforcement resources might be insufficient, and that federal agencies themselves might sometimes be polluters; the citizen suit provision created "private attorneys general" to aid in enforcement. But while most of the attention of the committee was directed to these enforcement suits, the committee was careful to note that the citizen suit concept applied as well to other actions taken by the EPA.
 
 
 20
 "The Committee bill would provide in the citizen suit provision that actions will lie against the [Administrator] for failure to exercise his duties under the Act, including his enforcement duties. The Committee expects that many citizen suits would be of this nature . . ." S.Rep. No. 91-1196, 91st Cong., 2d Sess. 38-39 (1970).
 
 
 21
 The committee thus apparently contemplated that suits such as the present one would fall within the citizen suit provision, and consequently qualify for appropriate awards of attorneys' fees under Sec. 304. When the bill reached the Senate floor, Senator Muskie, the bill's floor manager, answered criticism of the citizen suit provision by inserting in the record a memorandum stating that "[t]he concept in the bill is that administrative failure should not frustrate public policy and that citizens should have the right to seek enforcement where administrative agencies fail." 116 Cong.Rec. 33102 (1970). The policy of the Amendments is no less frustrated if the EPA approves an inadequate plan than if it fails to enforce an adequate plan. The Senate so understood when it included in the citizen suit section the provision authorizing citizen suits against the Administrator for failure to perform any act required by the Amendments.
 
 
 22
 The potential award of attorneys' fees was a logical complement to the right to bring citizen suits. The Senate committee foresaw that such awards would fulfill two important tasks. First, the potential for an award would encourage citizens to bring meritorious actions. Without the possibility of fees many meritorious actions would never be brought, since the plaintiff would face a certainty of attorneys' fees far higher than any personal gain he would reap if victorious. With attorneys' fees, it would financially be possible for such actions to be brought. See Posner, An Economic Approach to Legal Procedure and Judicial Administration, 2 J. Legal Studies 399, 428 437 (1973). "[I]n bringing legitimate actions under this section citizens [are] performing a public service and in such instances the courts should award costs of litigation to such party." S.Rep. No. 91-1196, 91st Cong., 2d Sess. 38 (1970).
 
 
 23
 Second, the committee noted that many Senators had expressed concern that some would abuse the citizen suit provision by bringing frivolous or harassing actions. The attorneys' fee provision was conceived as a primary deterrent to such actions, for the court could award to defendants the full costs of their defense in order to deter meritless suits.
 
 
 24
 The same considerations apply to actions brought in the circuit courts to challenge the EPA's approval of state implementation plans. The award of fees encourages suits that help the EPA to perform its difficult task. At the same time, "the court could . . . award costs of litigation to defendants where the litigation was obviously frivolous or harassing." Id. The court could also discourage such litigation merely by forcing the plaintiff to bear his own attorneys' fees.
 
 
 25
 Taking together the wording of Sec. 304, the legislative history of Sec. 307, and the legislative history of the citizen suit provision, we think that Congress specifically intended that proceedings brought pursuant to Sec. 307, 42 U.S.C. Sec. 1857h-5(b)(1), were to be entitled to the benefits and deterrents expressed in Sec. 304(d) via Sec. 304(a). The requirement of 28 U.S.C. Sec. 2412 that attorneys' fees be awarded only when specifically authorized has been satisfied. We conclude that we are empowered, in our discretion, to award such fees, as well as costs, against the EPA. We are also persuaded that reasonable costs and fees should, in this case, be awarded to petitioners.[7]
 
 
 26
 We are not impressed by the government's argument that because some issues were decided adversely to petitioners each party should bear its own costs. The authorizing language of Sec. 304(d) permits an award "to any party, whenever the court determines such award is appropriate." This suggests greater latitude even than is found in 28 U.S.C. Sec. 2412, which authorizes awards to "the prevailing party". We are at liberty to consider not merely "who won" but what benefits were conferred. The purpose of an award of costs and fees is not mainly punitive. It is to allocate the costs of litigation equitably, to encourage the achievement of statutory goals. When the government is attempting to carry out a program of such vast and unchartered dimensions, there are roles for both the official agency and a private watchdog. The legislation is itself novel and complex. Given the implementation dates, its early interpretation is desirable. It is our impression, overall, that petitioners, in their watchdog role, have performed a service.
 
 
 27
 Were we to believe that the litigation were wholly or in substantial part frivolous, we would not, of course, award costs of any description to petitioners. In such cases, indeed, we reserve the right to award costs and fees in favor of the EPA. But the challenges here, even those not sustained, were mainly constructive and reasonable. And petitioners were successful in several major respects; they should not be penalized for having also advanced some points of lesser weight.
 
 
 28
 As the government has not addressed in detail the question of the reasonableness of petitioners' requested sum, we now ask the parties to submit memoranda on that question. We will scrutinize carefully the requested costs and fees. Petitioners are not a public agency and are legally responsible to no one but themselves; we must satisfy ourselves that the taxpayers' money will not be used to support needless or excessive legal items. We must also recognize that petitioners, as surrogate attorneys for the interests of the public and the EPA, have volunteered and "imposed" their services on "clients" that never contracted for them. As attorneys for involuntary clients, their fees may properly be less than those they could have received by entering the marketplace and selling their services to the private client who would make the highest bid for them.
 
 
 29
 So ordered.
 
 
 
 [1]
 Some courts have drawn a sharp distinction between "benefit" cases in which the suit serves the interests of a limited group, and "private attorney general" cases in which the whole public is the beneficiary either because it receives a boon directly or because some "strong public policy" is vindicated. See, e. g., La Raza Unida v. Volpe, 57 F.R. D. 94 (N.D.Cal.1972) and cases cited therein. Cf. Hall v. Cole, 412 U.S. 1, 5 n.7, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). However, after Hall and Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L. Ed.2d 593 (1970), the concept of "benefit" includes any substantial improvement, financial or otherwise, provided to the beneficiary group. Whether that group is limited or includes the whole public should therefore ordinarily not affect the form of analysis. The number of beneficiaries would be important only when the court needed to determine whether the benefit was sufficiently large to justify an award of fees, or when the fees would be calculated to relate to the quantum of benefit
 
 
 [2]
 Clean Air Amendments of 1970 Sec. 304, 42 U.S.C. Sec. 1857h-2. The Amendments contain numerous other provisions for public participation, e. g., Sec. 1857c-5(a)(2)(F) (release of emission data to the public); Secs. 1857c-5(a)(1), (a)(2), and (f)(2)(A) (public hearings on original implementation plan and any revisions or postponements)
 
 
 [3]
 The legislative history provides no clues concerning Congress' reasons for broadly excluding awards of attorneys' fees. Such a result might seem to be inconsistent with the express desire to eliminate the "unfair" advantage possessed by the United States by virtue of its sovereign immunity. At the time of the enactment, however, the award of fees was still rare in American law and was often disfavored by the courts. See, e. g., Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). The omission may simply have been a reflection of the prevailing American rule, preserving to Congress the option of reversing the rule when justice required
 
 
 [4]
 "The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. . . ."
 
 
 [5]
 The government contends that Sec. 304(d), even if applicable to this case, does not authorize the award of fees against the government. This reading of the statute is in sharp conflict with its plain words, which authorize the award against "any party" and which, in Sec. 304(a), specifically authorize suits with the United States as a party
 
 
 [6]
 A third alternative is that, since Sec. 304 mentions attorneys' fees and Sec. 307 makes no mention of them within the section, the court must infer that Congress deliberately chose to exclude attorneys' fees from the remedies available under Sec. 307. That same contention was made to, and expressly rejected by, the Supreme Court in Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed. 2d 702 (1973) and Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L. Ed.2d 593 (1970). Courts are to draw such a negative inference only when the legislative history is clear or when Congress has prescribed such "intricate remedies", Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), as logically to exclude the possibility of nondescribed remedies. Section 307 makes no mention of remedies
 
 
 [7]
 The government argues that, even though otherwise eligible, public interest organizations "formed for the purpose of litigating against the government" and endowed with "tax exempt status" should be denied attorneys' fees. In the alternative the government argues that fees of petitioners' staff counsel should be denied. We can find no support for such contentions in the legislative history or the words of the statute. Quite the contrary, Congress recognized that public interest organizations would conduct a great deal of litigation under the Amendments. And the Amendments themselves provide for the award of fees to "any party." 42 U.S.C. Sec. 1857h-2(d). If Congress desired to use the award of fees to encourage meritorious litigation and discourage frivolous suit, the identity of the party, and the source of its counsel, would be of little moment. See generally Miller v. Amusement Enterprises, Inc., 426 F.2d 534, 538-539 n.14 (5th Cir. 1970); Woolfolk v. Brown, 358 F. Supp. 524, 536 (E.D.Va.1973); La Raza Unida v. Volpe, 57 F.R.D. 94, 98 n.6 (N.D.Cal. 1972)