Mary Burke SPROGIS, Plaintiff-Appellant (Cross-Appellee),

v.

UNITED AIR LINES, INC., a corporation, Defendant-Appellee (Cross-Appellant).

Nos. 74–1806, 74–1807.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1975.

Decided June 4, 1975.

---

Irving M. King and Peggy A. Hillman, Chicago, Ill., for Sprogis.

Stuart Bernstein, Chicago, Ill., for United Air Lines.

Before SPRECHER, TONE and BAUER, Circuit Judges.

BAUER, Circuit Judge.

This case is before the Court on cross-appeals from a judgment of the United States District Court for the Northern District of Illinois, entered on June 10, 1974, approving the report of a special master with respect to the damages due the plaintiff but declining to make an award of attorneys' fees to plaintiff's attorneys.

This lawsuit was brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964[1] and challenged the policy of defendant, United Air Lines, Inc., which required that all airline stewardesses be unmarried. The plaintiff, one of a group of similarly situated stewardesses, was discharged from her employment as a stewardess by the Company upon her marriage in June, 1966, an action which plaintiff challenged as constituting sex discrimination in violation of Section 703(a) of the Civil Rights Act of 1964.[2]

Upon the final determination[3] that the Company's no-marriage rule and plaintiff's discharge pursuant to that rule violated Title VII of the Civil Rights Act of 1964 the District Court appointed a special master to recommend a money award due to the plaintiff. On April 18, 1974 the special master submitted his report recommending a damages award of $10,408.00 plus interest.

On July 3, 1974, the District Court denied the plaintiff's motion to alter or amend the June 10, 1974 judgment approving the special master's report and denying the plaintiff's petition for allowance of attorneys' fees. This appeal followed, Plaintiff challenges the denial of attorneys' fees and the amount of damages awarded. The defendant chal-

1. 42 U.S.C. § 2000e et seq.

2. Title VII, Section 703(a), 42 U.S.C. § 2000e–2, states that:

 "It shall be an unlawful employment practice for an employer—
 (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee, because of such individual's race, color, religion, sex or national origin."

3. 308 F.Supp. 959 (N.D.Ill.1970), aff'd 444 F.2d 1194 (7th Cir. 1971), cert. denied 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

lenges the award of any damages to plaintiff.

## THE DENIAL OF PLAINTIFF'S PETITION FOR ATTORNEYS' FEES WAS PROPER DUE TO THE SPECIAL CIRCUMSTANCES OF THIS LITIGATION.

The District Court appears to have denied plaintiff's petition for allowance of attorneys' fees of $45,000[4] because of the sponsorship of the lawsuit by the Air Lines Pilots Association (herein referred to as "ALPA"), the labor union which represents all United Air Lines stewardesses and of which the plaintiff is a member.

Plaintiff's petition for attorneys' fees makes it clear that ALPA was a real party in interest and that Mary Burke Sprogis was simply the nominal plaintiff. The petition alleges that ALPA initiated the suit. Mary Burke Sprogis agreed to act as party plaintiff and it was further agreed and understood that ALPA would bear the costs of litigation. The law firm representing Mary Burke Sprogis was retained by ALPA and ALPA paid the attorney fees and costs during the litigation. Mary Burke Sprogis thus had no financial responsibility for fees or costs. ALPA's interest, the petition claims, arises out of its collective bargaining status, but goes beyond its concern with defendant United Air Lines since other airlines in the United States also had no-marriage policies. The petition requests that the award of fees be made not to Mary Burke Sprogis, the prevailing party, but directly to ALPA and counsel.

The fee petition states that the reason ALPA and its attorneys concluded that a suit was necessary was "[B]ecause of the apparent inability of these stewardesses to obtain any redress for their discharges under the grievance provisions of the collective bargaining agreement. . . . "

However, only 20 days before the suit was filed, United and ALPA had in fact entered into an agreement on this very issue. On November 7, 1968, ALPA executed an agreement with United by which United revoked its no-marriage rule and agreed to offer reinstatement to all stewardesses terminated under the prior rule who had filed grievances under the ALPA-United basic collective bargaining agreement or complaints with the federal Equal Employment Opportunity Commission or other actions before state agencies. The agreement provided that acceptance of reinstatement would be in full satisfaction of any grievance or complaint filed by such stewardesses.

The agreement further provided that ALPA would encourage such stewardesses to accept reinstatement as provided above. Despite this undertaking to settle the disputed issues, ALPA agreed to represent Mary Burke Sprogis as a nominal plaintiff in a test case. . There is no doubt that Mary Burke Sprogis was eligible for reinstatement and that the settlement reached was intended to provide her relief. There was nothing improper in her foregoing the settlement and seeking back pay and a ruling that United's policy was violative of the sex discrimination provision of Title VII. Further, there is nothing improper in her union representing her in that litigation. Yet when the union used the suit as an attempted class action vehicle to represent all its members, it was circumventing the substance of the agreement it made previously with United. Furthermore, it never made clear its position in the litigation to the trial court or the defendant. The district court found that: "At no time has ALPA appeared in this suit or its interest been revealed herein prior to the recent filing of plaintiff's petition for fees." Admittedly, ALPA or its members were involved in a number of different lawsuits across the

---

4. The authority to allow attorneys' fees is provided in Section 706(k) of Title VII;

"In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs . . . . " 42 U.S.C. § 2000e–5(k).

country and its decision to participate in this case through a nominal plaintiff may have been justified. Nevertheless, it would be unfair to the defendant to now allow attorneys' fees because the defendant's strategy throughout this lawsuit and similar litigation may have been much different had it known that ALPA was a real party in interest. In Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) the Supreme Court in considering a similar civil rights case brought under Title II found that "special circumstances" [5] may render an award of attorneys fees unjust. We believe that such "special circumstances" are present in this case.

In addition to the "special circumstances" noted above, we believe that there are other factors that make the denial of attorneys' fees proper. First, this case does not represent the typical civil rights claim envisioned by Congress and in the past sponsored by various public interest organizations. Second, the claim for attorneys' fees is not proportionate to the recovery of damages by plaintiff. Third, the precedential value of this decision is not controlling in light of other concurrent litigation.

Plaintiff argues that the allowance of attorneys' fees should not be affected by the fact that counsel have been retained and paid by the Air Lines Pilots Association.

The kinds of organizations involved in these cases cited by plaintiff are public interest organizations which typically represent parties in civil rights suits. Thus the cases cited by plaintiff concern groups such as the American Civil Liberties Union, Lawyers Committee for Civil Rights Under Law, Center for Law in the Public Interest, Women's Law Fund, Public Advocates, Inc., Legal Aid Society, as well as the Legal Defense Fund.

But ALPA's role in this litigation is in no way analogous to that of a public interest organization. ALPA was directly involved in the substance of the litigation, and it was party to a settlement agreement executed before this suit was filed.

Although attorneys fees have been granted in cases [6] with organization sponsorship, they are not awarded without regard to the underlying circumstances of the case. The trial judge is vested with substantial discretion in Title VII cases. See Williams v. General

5. *Newman, supra,* involved a civil rights action brought pursuant to Title II which allows for injunctions but under which damages cannot be recovered. Thus the rationale for granting attorneys' fees is far more compelling than in Title VII litigation where damages are recoverable. If plaintiffs had to bear their own attorneys' fees in a suit for injunctive relief "few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts" 390 U.S. at 402, 88 S.Ct. at 966. If an award of damages may be made inappropriate by special circumstances in a Title II case, where no damages are recoverable, then the same may be true in a Title VII case, where damages are recoverable.

6. Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974); Hoitt v. Vitek, 495 F.2d 219 (1st Cir. 1974); Jordan v. Fusari, 496 F.2d 646 (2nd Cir. 1974); Thompson v. Madison County Board of Education, 496 F.2d 682 (5th Cir. 1974); Gates v. Collier, 489 F.2d 298 (5th Cir. 1973); Lea v. Cone Mills Corp., 438 F.2d 86 (4th Cir. 1971); Clark v. American Marine

Corp., 320 F.Supp. 709 (E.D.La.1970), aff'd 437 F.2d 959; Natural Resources Defense Council, Inc. v. Environmental Protection Agency, 484 F.2d 1331, 1338 fn. 7 (1st Cir. 1973); LaRaza Unida v. Volpe, 57 F.R.D. 94, 98 fn. 6 (N.D.Cal. 1972); The Stanford Daily v. Zurcher, 366 F.Supp. 18 (N.D.Cal.1973); Wade v. Mississippi Cooperative Extension, 378 F.Supp. 1251 (N.D.Miss.1974); Jones v. Seldon's Furniture Warehouse, Inc., 357 F.Supp. 886 (E.D.Va. 1973); Woolfolk v. Brown, 358 F.Supp. 524 (E.D.Va.1973); Van Davis v. County of Los Angeles, 8 EPD ¶ 9444 (C.D.Cal.1974); Bradley v. School Board of Richmond, 53 F.R.D. 28 (E.D.Va.1971), rev'd on other grounds, 472 F.2d 318 (4th Cir. 1972), cert. gr. 412 U.S. 937, 93 S.Ct. 2773, 37 L.Ed.2d 396 (1973); Quad-Cities Community News Service, Inc. v. Jebens, 334 F.Supp. 8 (S.C.Iowa 1971); NAACP v. Allen, 340 F.Supp. 703 (M.D.Ala.1972). See generally, Note, "Awards of Attorney's Fees to Legal Aid Offices," 87 Harv.L.Rev. 411 (1973); Nussmaum, "Attorneys' Fees in Public Interest Litigation," 48 N.Y.U.L.Rev. 301 (1973).

Foods Corp., 492 F.2d 399 (7th Cir. 1974); Schaeffer v. San Diego Yellow Cabs, 462 F.2d 1002 (9th Cir. 1972).

In this case the claimed attorneys' fees are more than four times the damages awarded. An award of attorneys' fees so disproportionate may be warranted if the case has substantial precedential value. However, considering the history of this case, the companion litigation, and what appears to be the final outcome, we do not believe that this case had such a substantial impact on the development of the law that would justify an award of attorneys' fees. On occasion, the successful litigation of one claim will save many thousands of dollars of legal fees and thus justify a large award of attorneys' fees. However, this is not such a case.

## DAMAGES

 A master's report was filed with the district court recommending a damages award of $10,408 plus interest. The master excluded from plaintiff's damages claim the period after May 31, 1968 because of plaintiff's pregnancy. Further, the master made a finding that plaintiff had not failed to use due diligence in attempting to find other employment. On appeal plaintiff challenges the disallowance of back-pay during the eight month period of her pregnancy. Defendant raises by its cross-appeal the issue of whether this is a proper application of Section 706(g) of Title VII which provides that:

"Interim earnings or amounts earnable with reasonable diligency by the persons discriminated against shall operate to reduce the back pay otherwise allowable."

In contrast to the master's finding, defendant argues that little or no damages should have been awarded because plaintiff failed to use reasonable diligence in attempting to find employment during the period of discrimination.

In a Title VII case such as this, once the plaintiff has proven her case and established what she contends to be her damages, the burden of going forward to mitigate the liability, or, to rebut the damages claim, rests with the defendant. As stated in N.L.R.B. v. Madison Courier, Inc., 153 U.S.App.D.C. 232, 472 F.2d 1307, at 1318 (1973):

"[T]he burden of establishing facts in mitigation of the back pay liability is upon the [employer] and *not* upon [the attorney who represents the interests of the discriminatee].

Once the [plaintiff's attorney] has established the gross amount of back pay due the discriminatees in question, 'the burden is upon the employer to establish facts which would negative the evidence of liability to a given employee or which would mitigate that liability.'" [citation omitted, emphasis in original].

The employer must show that the discriminatee lacked reasonable diligence in exercising those first steps necessary to find employment. N.L.R.B. v. Brown & Root, Inc., 311 F.2d 447, 452 (8th Cir. 1963); N.L.R.B. v. Madison Courier, Inc., *supra,* 472 F.2d at 1319; United States v. Wood, Wire & Metal Lathers Union, 328 F.Supp. 429 (S.D.N.Y.1971).

The evidence in this case shows that plaintiff did find employment for two months and did make at least one formal application for employment. What the record fails to disclose is whether plaintiff checked want ads, registered with employment agencies, discussed employment opportunities with friends and acquaintances. A reasonable person seeking employment would take all these steps if that person was sincere about obtaining employment. The record does not really disclose whether plaintiff engaged in these activities and it was the defendant's burden to show that plaintiff neglected to take the normal steps in securing employment. We believe the master recognized the deficiencies of

proof on the issue of mitigation. He summarized the state of the record as follows:

> "There is nothing in the record to show that Plaintiff did not use reasonable diligence to find other suitable or substantially similar employment, or that she did not in any way act reasonably to avoid or lessen the damages claimed or that she acted unreasonably to enhance the damages.

> Whatever is in the record shows that she did seek suitable employment; that she acted reasonably in this respect, but that she could not find it."

 In allowing damages the master recommended, and the district court approved, the denial of any back pay to plaintiff for the eight months of her pregnancy. Plaintiff objects to this finding and claims that had she not been discharged she would not have become pregnant. Without discussing this proposition at length, we can only note that the contract of employment under which the plaintiff worked as a stewardess, and the amended agreement which eliminated the no-marriage clause,[7] each provide that stewardesses discontinue flying upon becoming pregnant. The plaintiff is entitled to her wage losses as a result of the wrongful act of the defendant during the period she could have been employed. Since, under either contract of employment, she could not have worked as a stewardess while pregnant, she is not entitled to be paid for the period of her pregnancy.

Accordingly, we affirm the decision of the district court in all respects.

---

7. See Letter of Agreement between United Air Lines, Inc. and the Stewardesses and Flight Stewards in the service of United Air Lines, Inc. as represented by ALPA, executed on November 7, 1968.