**FRIENDS OF THE EARTH, et al., Plaintiffs,**

v.

**POTOMAC ELECTRIC POWER COMPANY, Defendant.**

Civ. A. No. 75–0747.

United States District Court, District of Columbia.

Sept. 17, 1982.

See also, D.C., 419 F.Supp. 528.

Judith W. Rogers and Richard G. Wise, Washington, D. C., for plaintiffs.

George V. Allen, Jr., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

Plaintiff Friends of the Earth (FOE) brought this action against the Potomac Electric Power Company (PEPCO) pursuant to the "citizen suit" provision of the Clean Air Act of 1970, § 304, 42 U.S.C. § 7604 (Supp. IV 1980). FOE alleged PEPCO was in violation of regulations promulgated by the District of Columbia (the District) setting emission standards and limitations under the Act. Since states [1] and the Environmental Protection Agency (EPA) have responsibility for Act enforcement, FOE joined the EPA Administrator (Administrator); the Environmental Protection Agency; and the District of Columbia as necessary party-defendants to this action, pursuant to Fed.R.Civ.P. 19(a)(1) and (2).

In response to FOE's suit, the District moved for realignment as a plaintiff. As grounds for its motion, the District alleged it had determined that enforcement action against PEPCO for violations of the Air Quality Control Regulations was necessary. Motion of the Defendant District of Columbia to be Realigned as a Party Plaintiff (filed June 16, 1975). The court granted the District's motion for realignment on October 24, 1975.

On August 16, 1976, the court granted partial summary judgment as to the visible emissions aspect of the case. *Friends of the Earth v. Potomac Electric Power Company,* 419 F.Supp. 528 (D.D.C.1976). Following that decision, the parties engaged in settlement discussions concerning the mass particulate emissions aspect of the case. On March 31, 1978, the parties filed an agreement which modified existing PEPCO operating practices and also included proposed legislation clarifying and modifying certain air pollution laws applicable to PEPCO's operations in the District. After the District enacted the legislative proposals and the EPA approved them, the parties filed a joint motion for dismissal of the complaint. By order filed May 13, 1980, the court granted that motion, and also retained jurisdiction for consideration of any party's motion for an award of the costs of litigation, including reasonable attorneys' fees.

In the motion now before the court, the District asserts its claim against PEPCO for the costs of litigation, including attorneys' fees, pursuant to the "citizen suit" provision, § 304(d), of the Clean Air Act.[2] That section provides that

---

1. The District of Columbia is a state for the purposes of the Clean Air Act. 42 U.S.C. § 7602(d). In this memorandum, the word "state" refers both to states and to the District of Columbia.

2. FOE and PEPCO have already settled their claims against each other for the costs of litigation.

The Court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.... [42 U.S.C. § 7604(d).]

PEPCO contends that the citizen suit section does not authorize fee awards to government enforcement agencies; and that even if the section authorizes such awards, an award is not appropriate in this case.

For the reasons set forth below, the court denies the District's fee request. Since the court concludes that an award is inappropriate in this case, it does not reach the more fundamental question of Congressional authorization for costs awards to states which bring citizen suits.[3]

## HISTORY OF THE LITIGATION

FOE's original complaint in this action and an August 5, 1975 letter from EPA's Regional Administrator[4] describe why the District of Columbia was named in this lawsuit.[5]

The District of Columbia in July 1972 issued health regulations concerning particulate emissions; visible emissions; and records, reports, and monitoring devices. These regulations required immediate compliance by existing sources unless a written plan for delayed compliance was filed and approved by the District.

In late 1972 and early 1973, the District advised PEPCO that PEPCO was violating particulate emission standards. The District requested PEPCO to submit a compliance plan by January 31, 1973. PEPCO submitted a plan which the District deemed deficient on August 15, 1973. On January 10, 1974 the District, pursuant to its health regulations, issued an abatement order to PEPCO.

A hearing was held to review the District's order to PEPCO in summer 1974. According to FOE's complaint, at the hearing the Corporation Counsel agreed verbally with PEPCO that PEPCO would not be prosecuted for slight violations of the regulations. According to the Regional Administrator's letter, the Mayor as of early 1975 had not acted on the hearing examiner's report. In early 1975, FOE notified the Administrator and the District of its plans to file this citizen suit. FOE brought suit in May 1975, naming the District as a defendant. FOE's complaint alleges, "The District of Columbia Corporation Counsel's office has never gone to court against a polluter. The only sanctions to date have been consent orders and the issuance of 'tickets' (similar to parking tickets) providing for collateral in the sum of $25 to $100." Complaint ¶ 48 (filed May 9, 1975).

---

3. *Alabama Power Co. v. Gorsuch,* 672 F.2d 1 (D.C.Cir.1982) authorized an award to the District of Columbia under Clean Air Act § 307, which provides for judicial review of the Administrator's action in promulgating standards, rules, and implementation plans.

    For examples of cases where states have brought suit pursuant to § 304, *see Illinois v. Celotex,* 516 F.Supp. 716 (C.D.Ill.1981) and *Illinois v. Commonwealth Edison Co.,* 490 F.Supp. 1145 (N.D.Ill.1980). These suits were brought in federal court pursuant to federal law, rather than in state court pursuant to state law, because the pollution control rule at issue had been held unenforceable by the state courts, but was still enforceable in federal court as part of a State Implementation Plan approved by the Administrator. These cases have not yet reached the attorneys' fees stage.

4. Letter from Daniel J. Snyder, EPA Regional Administrator, to Brad Whitman, Department of Justice Attorney (August 8, 1975) (filed August 15, 1975).

5. Since FOE and the District filed an amended complaint after the District moved to realign and since some aspects of this lawsuit were eventually settled, the court has not had the opportunity to determine the truth of all the original complaint's allegations. The original complaint's allegations are nevertheless relevant to an understanding of FOE's decision to name the District as a defendant.

Confronted with the Friends of the Earth notice and subsequent suit, the District of Columbia had three choices. First, it could have initiated suit in federal court or in D.C. Superior Court prior to the expiration of the sixty-day notice period. Second, the District, once sued, could have moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that the complaint appeared not to state a claim against the District of Columbia, and that even if it did, an allegation that a government instrumentality has failed to enforce the Clean Air Act does not satisfy the statutory requirement that the government instrumentality be alleged to be in violation of an emission standard or limitation. *Citizens Association of Georgetown v. Washington,* 535 F.2d 1318, 1320 (D.C.Cir.1976). Third, the District could have moved for realignment.

The District ultimately chose the third alternative. Its first action in this case was to request an extension of time in which to answer or otherwise respond to FOE's complaint because "the administrative history of negotiations, agreements, meetings and orders which preceded the bringing of this suit is complex and requires detailed study and analysis by counsel for the District of Columbia prior to making a response to the complaint." Motion of the Defendant District of Columbia for an Extension of Time in which to Answer or Otherwise Respond to the Complaint (filed May 29, 1975). In a subsequent pleading, the District stated that it had "independently determined that enforcement action against PEPCO was necessary prior to the filing of the suit by plaintiffs," and moved for realignment. Motion of the Defendant District of Columbia to be Realigned (filed June 16, 1975). The amended complaint filed by FOE and the District did not contain any allegations concerning the inadequacy of the District's enforcement efforts against PEPCO.

As realigned plaintiff, the District of Columbia participated in this lawsuit by collaborating in the drafting of the amended complaint; taking depositions; helping to prepare plaintiffs' summary judgment motion; and participating in settlement negotiations. The District also issued an abatement order to PEPCO and processed a variance request submitted by PEPCO. The District claims attorneys' fees for all these activities.

## APPROPRIATENESS OF A FEE AWARD

In *Metropolitan Washington Coalition for Clean Air v. District of Columbia,* 639 F.2d 802, 804 (D.C.Cir.1981), the Court of Appeals held that an award in a § 304 citizen suit is "appropriate" if "the suit was of the type that Congress intended to encourage when it enacted the citizen-suit provision." The Court of Appeals has further elucidated the appropriateness standard in cases decided under other sections of the Clean Air Act and other environmental statutes which use the same test. In those cases, the Court of Appeals has held that an award is appropriate if a party has "substantially contributed to the goals of the Act," *Sierra Club v. Gorsuch,* 672 F.2d 33, 42 n.10 (D.C.Cir.1982) (interpreting § 307(b)) and if a party has "served the public interest by assisting the interpretation or implementation of the ... Act." *Alabama Power Co. v. Gorsuch,* 672 F.2d 1, 3 (D.C.Cir.1982) (interpreting § 307(b)). *See also Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 672 F.2d 42 (D.C.Cir.1982) (interpreting Toxic Substances Control Act appropriateness standard, 15 U.S.C. § 2618(d)).

There is no doubt that the underlying suit here is itself in the public interest. The appropriateness of a fee award, however, depends also on whether and under what circumstances Congress intended the attorneys' fees provision to encourage realignment of governmental entities originally named as defendants in citizen suits.[6]

6. The court models its inquiry on that of *Donnell v. United States,* 682 F.2d 240 (D.C.Cir. 1982). *Donnell* considered whether citizens

The Clean Air Act contemplates that the federal government, the states, and private citizens will each implement or enforce the Act in different ways. The Act requires the Administrator to determine which emissions into the air are pollutants, and to establish the minimum acceptable level in the air of any particular pollutant. 42 U.S.C. §§ 7408–7409. The Act leaves to each state the drafting of a "state implementation plan" (SIP) to provide for the implementation, maintenance, and enforcement of the air quality standards set by the Administrator. The SIP must provide "necessary assurances that the State will have adequate personnel, funding, and authority to carry out [the] implementation plan." 42 U.S.C. § 7410(a)(2)(F)(i).

Once a SIP goes into effect, the Act provides three different mechanisms for the SIP's enforcement. States may sue violators pursuant to state or federal law. The Administrator may also sue a violator, after giving thirty days notice to the state in which the polluter is located. 42 U.S.C. § 7413(a)(1). And, because Congress recognized that federal or state enforcement of the Act might be insufficient, the Act also provides for citizen suits. Congress hoped that providing citizens with a liberal right of action would "stir slumbering agencies and ... circumvent bureaucratic inaction that interferes with the scheduled satisfaction of the federal air quality goals." *Friends of the Earth v. Carey,* 535 F.2d 165, 173 (2d Cir. 1976).

■ While Congress sought to encourage citizen suits, citizen suits were specifically intended to provide only "supplemental ... assurance that the Act would be implemented and enforced." *Natural Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 700 (D.C.Cir.1974). Congress made "particular efforts to draft a provi-

sion that would not reduce the effectiveness of administrative enforcement, ... nor cause abuse of the courts while at the same time still preserving the right of citizens to such enforcement of the act." Senate Debate on S. 3375, March 10, 1970, *reprinted in* Environmental Policy Division of the Congressional Research Service, A Legislative History of the Clean Air Amendments of 1970, Vol. I. at 387 (1974) (remarks of Senator Cooper). Specifically, the Act requires that sixty days before filing a citizen suit, plaintiffs give notice of the violation at issue to the Administrator; to the state in which the violation occurs; and to any alleged violator of the standard, limitation, or order. 42 U.S.C. § 7604(b)(1)(A). The purpose of the notice provision is to allow the Administrator and other officials to rectify inaction, and thus obviate the need for judicial recourse. *NRDC v. Train,* 510 F.2d at 703.

■ If, however, the Administrator and the state do not themselves bring suit during the sixty-day notice period, citizens may bring suit without joining the Administrator and state as necessary parties. *See Metropolitan Washington Coalition v. District of Columbia,* 511 F.2d 809, 814–815 (D.C.Cir.1975). While courts welcome participation in Clean Air Act suits of governmental units with both enforcement responsibility and expertise, Congress intended the courts to enforce mandated air quality plans irrespective of the failings of agency participation. *Friends of the Earth v. Carey,* 535 F.2d at 173.

■ The Act contemplates that each of the three mechanisms for the Act's enforcement will be triggered by a different incentive. The Administrator is required by statute to enforce the Act. He is subject to direction of the President and the Congress.

The states are mandated to develop their own SIPs and to ensure that enforcement

---

who intervene on behalf of the defendant Department of Justice in a Voting Rights Act case may recover attorneys' fees. The *Donnell* court examined the legislative history of 42 U.S.C. § 1973*l*(e) and concluded that while the

Voting Rights Act permits award of attorneys' fees to intervenors, Congress did not intend such awards to be as nearly automatic as they are for parties who prevail in their own right. *Donnell,* 682 F.2d at 246.

resources are adequate for carrying out their SIPs. The enforcement plans of all but a few states[7] include provisions for imposing fines upon violators. *See, e.g.,* D.C.Code § 6–902(a)(5). The Administrator or private citizens may bring actions pursuant to the SIP after the requisite notice period. Consequently, states are motivated to enforce pollution control regulations because states design the SIPs promulgating those regulations and allocate resources and recover fines for their enforcement, and because states often prefer state to federal or private enforcement.

Private citizens are not motivated by the same political and statutory considerations which influence federal and state action. Moreover, since private plaintiffs frequently face a certainty of attorneys' fees far higher than any personal gain they reap if victorious, private citizens are often reluctant to bring suit without the possibility of a fee recovery. *Natural Resources Defense Council, Inc. v. Environmental Protection Agency,* 484 F.2d 1331, 1337 (1st Cir. 1973). Consequently, the citizen suit section contains an attorneys' fees provision to encourage citizens to bring meritorious actions by allocating equitably the costs of litigation. *Id.* at 1337–1338.

■ Award of attorneys' fees in this case would not further the policy of the Clean Air Act. First, the Act's legislative scheme prefers governmental enforcement in the first instance to private enforcement via citizen suits. An award in this case would frustrate that scheme by rewarding the District for relaxing its own enforcement efforts until citizens forced it to action.

Second, the attorneys' fees provision is designed to remedy lax governmental enforcement by ensuring enforcement by citizens with otherwise little incentive to litigate. Arguably, the availability of attorneys' fees to governmental entities original-

ly named as defendants would encourage those entities to assist citizens' enforcement efforts by moving for realignment rather than seeking dismissal. But states' interests in the issues presented by citizens' lawsuits are often so strong that states do not need the extra incentive of attorneys' fees. Even if states need extra encouragement, the statutory scheme does not place sufficiently high priority on governmental participation once a citizen suit is filed to justify an award for mere governmental participation in the suit.

■ Finally, while in some instances the governmental entity's post-realignment contribution to effectuation of the Clean Air Act's goals might be significant enough to overcome the presumption against rewarding initial inaction, that is not the case here. When a governmental entity successfully enforces a statutory provision it is charged to enforce, such as the Voting Rights Act, citizen intervenors are awarded attorneys' fees only if the governmental litigant did not adequately represent the intervenors' interests, if the intervenors proposed different theories and arguments for the court's consideration, if the work the intervenor performed was of important value to the court, *Donnell v. United States,* 682 F.2d 240 at 251 slip op. at 18 (D.C.Cir. 1982), and if the result obtained in settlement reflects the position espoused by the intervenors rather than the government. *Commissioners Court of Medina County, Texas v. United States,* 683 F.2d 435 at 442 (D.C.Cir.1982). Even if the standard for an intervenor's contribution is lower for governmental parties under the Clean Air Act than for citizen-intervenors under the Voting Rights Act, consideration of the criteria described above shows that the District's contribution in this case was not sufficiently substantial to warrant an award of attorneys' fees.

CONCLUSION

An award of costs of litigation including reasonable attorneys' fees to the District in

---

7. The court found provisions for imposing fines in the laws of 48 states. The court's research disclosed no such provisions in the laws of Arkansas and Minnesota. *See* Envir.Rep. (BNA).

this case is inappropriate. The District's request for an award of costs of litigation is DENIED.