**LEAGUE TO SAVE LAKE TAHOE, INC., a California Membership Corporation et al., Plaintiffs,**

v.

**Roger S. TROUNDAY, Director of the Nevada Department of Human Resources, et al., Defendants.**

**Civ. No. R–76–85 BRT.**

United States District Court, D. Nevada.

March 10, 1977.

Joseph J. Brecher, Oakland, Cal., John C. Rogers, Incline Village, Nev., for plaintiffs.

Robert List, Atty. Gen., Carson City, Nev., for Roger Trounday.

Breen, Young, Whitehead & Hoy, F. R. Breen, Reno, Nev., for Oliver Kahle.

McDonald, Carano, Wilson, Bergin & Bible, John Frankovich, Reno, Nev., for Ted Jennings.

## ORDER DISMISSING ACTION.

BRUCE R. THOMPSON, District Judge.

This is an action brought by plaintiffs above named against defendants above named to enforce the requirements of the Clean Air Act (42 U.S.C. 1857, et seq.). Jurisdiction is predicated on the citizen suit provisions of the Clean Air Act (42 U.S.C. 1857h–2) and 28 U.S.C. 1331(a). The individual defendants Kahle and Jennings are owners and operators of hotels about to be constructed at the south end of Lake Tahoe, Nevada.

The action is before the Court on the several motions to dismiss filed by defendants.

To state the facts the Court can do no better than copy the charging allegations of the concise, lucid and well-pleaded Amended Complaint.

"8. Under § 109(b)(1) of the Clean Air Act, 42 U.S.C. § 1857c–4(b)(1), EPA is required to promulgate primary ambient air quality standards which are requisite to protect the public health. EPA has promulgated such standards for carbon monoxide (CO) at 40 C.F.R. § 50.8. The maximum CO concentrations permissible under the standards are 35 parts per million for a one-hour period and 9 parts per million for an eight-hour period.

"9. Section 110(a) of the Clean Air Act, 42 U.S.C. § 1857c–5(a) requires each state to submit to the federal Environmental Protection Agency ("EPA") a plan which provides for implementation, maintenance, and enforcement of the primary ambient standards. The State of Nevada submitted such an implementation plan to EPA and the portion thereof concerned with the CO standards was approved and accepted, 40 C.F.R. § 52.1472. That implementation plan includes the various state statutory and regulatory provisions discussed in paragraphs 10, 11 and 15.

"10. Section 3.2.2 of the Nevada air quality regulations makes the obtaining of a valid registration certificate a prerequisite to the construction of any complex source of air pollution. 'Complex source' is defined by N.R.S. § 445.446(2) as 'any property or facility that has or solicits secondary or adjunctive activity which emits or may

emit any air contaminant for which there is an ambient air quality standard, notwithstanding that such property or facility may not itself possess the capability of emitting such air contaminants. Complex sources include, but are not limited to (a) highways and roads (b) parking facilities . . . (d) recreation, amusement, parks, or entertainment facilities.' Sections 13.2.1 and 13.-2.4 of the Nevada air quality regulations specifically require a permit application for construction of any new parking facility or other structure with associated parking facilities for 1000 or more cars.

"11. Under § 13.1.1 of the Nevada air quality regulations, the owner of a proposed new complex source must apply to the director of the Department of Human Resources for a registration certificate and must submit an environmental evaluation of the project. If the environmental evaluation shows, or if the Director determines that the source will prevent the attainment or maintenance of an applicable ambient air quality standard, the Director may not issue a registration certificate, under the terms of Regs. § 13.1.3.

"12. On August 12, 1974, defendant Kahle submitted an application for a registration certificate for a new hotel and casino to be constructed on a 24-acre parcel of Highway 50 and State Route 19 in Stateline, Nevada. The plans call for 33,512 square feet of casino floor space, 960 hotel rooms, and miscellaneous theatre, dining and meeting facilities, with parking for 2400 cars. On the basis of the environmental analysis and amendments thereto submitted by defendant Kahle, defendant Trounday concluded that construction of the hotel-casino as planned would result in violations of CO ambient standards and accordingly required major changes in the amount of casino floor space, highway access plans, and parking garage operations procedures. With these changes, defendant Trounday concluded that such violations would not occur and, accordingly issued registration certificate No. 88 to defendant Kahle on May 19, 1975.

"13. On August 12, 1974, defendant Jennings submitted an application for a registration certificate for a new hotel and casino to be constructed on a 20-acre parcel across Highway 50 from the proposed Hotel Oliver in Stateline, Nevada. The plans call for 32,350 square feet of casino floor space, 560 hotel rooms, and various convention and theatre facilities, with parking for 1600 cars. On the basis of the environmental analysis submitted by defendant Jennings, defendant Trounday concluded that construction of the hotel and casino as planned would result in violations of ambient CO standards, and accordingly required major changes in the amount of casino floor space, highway access plans, and parking garage operations procedures. With these changes, defendant Trounday concluded that such violations would no longer occur and thus issued registration certificate No. 84 to defendant Jennings on April 15, 1975.

"14. The findings of defendant Trounday that construction of the two hotel-casinos described in paragraphs 10 and 11 were based on improper assumptions and did not take into account all the evidence available to him. As such, those findings constituted an abuse of discretion. Specifically, his analysis did not take into account the situation that would occur under the most adverse meteorological conditions and failed to consider CO levels within the projects areas. Upon the request of plaintiffs, defendant Trounday's subordinates recalculated expected CO levels within the hotel grounds under adverse conditions using the same methodology that had been employed to assess the applicants' environmental analyses. The results of that recalculation showed that the one-hour CO standard would be exceeded by 7% and, by extrapolation, that the eight-hour standard would be exceeded by over 100%. In addition, defendant Trounday ignored evidence that the CO standards are already being exceeded at various locations along Highway 50 and that the additional traffic on the highway generated by the two casinos would cause even more severe and frequent violations.

"15. Since the construction of the Oliver and Tahoe Palace Hotels will cause violations of the ambient air quality standards for CO, defendants Kahle and Jennings could not properly be issued registration certificates under N.R.S. § 445.491(1)(b)(2) and Nevada air quality regulations § 13.1.3. Therefore, construction at the two hotels violates § 3.3.3 of the regulations. This constitutes a violation of an emission standard or limitation as that term is used in Clean Air Act § 304(a)(1), 42 U.S.C. § 1857h–2(a)(1).

"16. On March 2, 1976, plaintiffs' attorney notified defendants of the violation described above, pursuant to the requirements of Clean Air Act § 304(b), 42 U.S.C. § 1857h–2(b) and 40 C.F.R. Part 54. More than 60 days has elapsed from the date on which the notice was sent.

"17. Because of the unlawful action of defendant Trounday described in paragraphs 14 and 15 and the unlawful construction activity by defendants Kahle and Jennings, the ambient standards for carbon monoxide will be frequently violated. As a result, the health and welfare of the plaintiffs will be subject to irreparable injury.

"WHEREFORE, plaintiffs pray:

"1. That this court enter its judgment declaring that registration certificate no. 88, issued to defendant Kahle and no. 84, issued to defendant Jennings are null and void.

"2. That defendants Kahle and Jennings be ordered to cease construction on the Hotels Oliver and Tahoe Palace until valid registration certificates are obtained.

"3. That plaintiffs be awarded their reasonable costs of litigation, including reasonable attorney's and expert witness' fees, as permitted by Clean Air Act § 304(d), 42 U.S.C. § 1857h–2(d).

"4. That plaintiffs have such other and further relief as this Court may deem just and proper."

In substance, the issue presented is whether a citizen can state a claim for relief for alleged violation of federal ambient air quality standards against a complex source which is about to be constructed in compliance with the approved state implementation plan. The answer depends upon a determination of Congressional intent in enactment of the Clean Air Act with amendments. In our opinion, the answer is "No."

The general Congressional plan to control air pollution throughout the United States is clearly discernible from the statute. Initially broad powers were granted to the Secretary of Health, Education and Welfare, for whom the Administrator of the EPA was later substituted, to conduct extensive research and investigation into the control of air pollution (42 U.S.C. 1857(b)). Funding was provided for state planning. The Secretary was granted a plenary authority to establish ambient air quality standards (42 U.S.C. 1857c–2). Each state was given an opportunity to adopt "a plan for the implementation, maintenance and enforcement of such standards of air quality adopted."

The Nevada plan was adopted (NRS 445.-401 et. seq.) and was approved by the Administrator (40 C.F.R. 52.1470) with exceptions not pertinent to this action.

The Nevada statute establishes a state environmental commission in the Department of Human Resources of which defendant Trounday is the Director. The following are the statutory provisions pertaining to the processing and review of orders concerning the construction of complex sources:

"445.496 Approval of plans, specifications prerequisite to construction alteration of structure.

"1. The commission shall require, with respect to all sources of air contaminant, including complex sources, that plans, specification and such other information as the commission may direct be submitted to the director not later than a specified interval prior to the construction or alteration of a building or other structure if such construction or alteration includes the establishment or alteration of a source or complex source of air contaminant.

"2. The local government authority, if any, responsible for issuing any required building permit shall not issue such building permit until the registration has been made pursuant to regulation and no stop order prohibiting such construction or alteration has been issued.

"445.497 *Notice of regulatory action: Requirement; method; contents of notice.* When the department takes any regulatory action, under the provisions of NRS 445.401 to 445.601, inclusive, or under any rule, regulation, order or standard based thereon, it shall give reasonable notice to all parties by certified mail, which notice shall state the legal authority, jurisdiction and reasons for the action taken.

"445.498 *Appeals to commission: Notice of appeal.* A party aggrieved may file notice of appeal with the commission within 10 days after the date of notice of action of the department, except as otherwise provided by law.

"445.499 *Appeals to commission: Hearings.*

"1. Within 20 days after receipt of the notice of appeal provided for in NRS 445.498, the commission shall hold a hearing.

"2. Notice of the hearing shall be given to all affected parties no less than 5 days prior to the date set for the hearing.

"3. The commission may sit en banc or in panels of three or more to conduct hearings.

"4. The attendance of witnesses and the production of documents may be subpenaed by the commission at the request of any party. Witnesses shall receive the fees and mileage allowed witnesses in civil cases. Costs of subpenas [sic] shall be taxed against the requesting party.

"5. All testimony shall be given under oath, and recorded verbatim by human or electronic means.

"6. For the purpose of judicial review under NRS 445.571, the parties may agree upon a statement of facts in lieu of a transcript of testimony.

"7. Costs of transcribing proceedings of the commission shall be taxed against the requesting party.

"445.501 *Appeals to commission: Appealable matters; commission action; rules for appeals; judicial review.*

"1. Any person aggrieved by:

(a) The issuance, denial, renewal, suspension or revocation of an operating permit; or

(b) The issuance, modification or rescission of any other order, by the director may appeal to the commission.

"2. The commission shall affirm, modify or reverse any action taken by the director which is the subject of the appeal.

"3. The commission shall provide by rule for the time and manner in which appeals are to be taken to the commission.

"4. Any decision or order of the commission may be appealed as provided in NRS 233B.130."

In addition, the Nevada State Environmental Commission, in September, 1974, pursuant to statutory authorization, adopted regulations. Article III "Registration Certificates and Operating Permits" provides, in pertinent part:

"3.2.1 A separate registration certificate is required for each new single or complex source.

"3.2.2 The obtaining of a valid registration certificate is a prerequisite to the construction or alteration of any single source or complex source of air contaminant.

"3.2.3 Requests for the issuance of a registration certification or the replacement of a lost or damaged registration certificate with the appropriate fee shall be submitted to the Director on the application form provided by him.

"3.2.4 Within 5 working days after receiving an application for registration, the Director shall determine what, if any, additional information is needed. Within 15 days after receiving adequate information the Director shall make a preliminary determination to issue or deny is-

suance of a registration certificate. Within 75 days after receiving adequate information, pursuant to Article 13, the Director shall issue or deny issuance of a registration certificate.

"3.2.5 A registration certificate shall only expire if construction of a new or modified source, including a complex source, is not commenced within one year from the date of issuance thereof or construction of the facility is delayed for one year after initiated.

"3.2.6 The fee for each initial registration certificate, its replacement, or renewal is $10.00 and shall be made payable to the State of Nevada.

"3.3 Stop Orders:

"3.3.1 A stop order will be issued if:

"3.3.1.1 The proposed construction, installation, alterations, or establishment will not be in accordance with the provisions of the plans, specifications, and other design material required to be submitted for registration; or

"3.3.1.2 The design material or the construction itself is of such a nature that it patently cannot bring such source into compliance with these regulations.

"3.3.2 A stop order can be issued at any time before the operating permit is granted, except that a stop order for a source shall not be issued after construction or modification has commenced if the construction is in accordance with the provisions of the registration certificate as submitted and approved by the Director under Article 13 hereof.

"3.3.3 A person served with a stop order shall forthwith stop all activities specified in the stop order.

"3.3.4 A stop order shall be a written statement stating the reason for its issuance.

"3.3.5 A person served with a stop order may apply for its revocation at any time, setting forth the facts upon which he believes that the reasons for the issuance of the stop order no longer exist. If the Director finds that the reasons for the issuance of the stop order no longer exist, he shall withdraw the order promptly. If the Director finds that the reasons for issuance of the stop order still exist, or that other reasons exist for continuing a stop order in effect, he shall, within 24 hours, serve a written statement of his reasons for so finding."

Article 13 "Complex Sources and Large Stationary Sources" provides:

"13.1 General Provisions for the Review of New Sources.

"13.1.1 Prior to the issuance of any registration certificates in accordance with this Article, the applicant shall submit to the Director an environmental evaluation and any other information the Director may deem necessary to make an independent air quality impact assessment. The environmental evaluation must have approval for any street or highway changes or improvements from the county, regional, or State highway agency having jurisdiction over the streets and highways affected by the complex source prior to submittal to the Director.

"13.1.2 The preliminary intent to issue or deny issuance of a registration certificate for a single or complex source shall be made within 15 days after receiving adequate information for reviewing the registration application. The application, the Director's review, and preliminary intent to issue or deny shall be made public and maintained on file with the Director during normal business hours at 1209 Johnson Street, Carson City, Nevada, and in the Air Quality Region where the source is located at a site specified in a prominent advertisement by the Director for thirty (30) days to enable public participation and comment. All comments on the Director's review and preliminary intent for issuance or denial shall be submitted in writing to the Director within thirty (30) days after the public announcement. Within the time period prescribed by Article 3.2.4, the Director shall make his decision, taking into account written public comments on the Director's review and preliminary intent for issuance or denial, project proponent sub-

mittal, and the effect of such a facility on the maintenance of the ambient air quality standards as contained in Article 12 and the control strategy contained in the Air Quality Implementation Plan.

"13.1.3 The Director shall not issue a registration certificate for any source if the environmental evaluation submitted by the applicant shows, or if the Director determines, in accordance with the provisions of this Article, that the source will prevent the attainment and maintenance of the State and national ambient air quality standards or will cause a violation of the applicable control strategy contained in the approved Air Quality Implementation Plan."

NRS 233B.130 referred to in NRS 445.-501(4), supra, is the Nevada Administrative Procedure Act, which provides for full judicial review of agency action under standards substantially similar to those articulated in the Federal Administrative Procedure Act.

It seems quite obvious, particularly in the light of the prayers of the complaint, supra, that the main purpose of the action is to obtain federal judicial review of state agency action, that is, the decision of defendant Trounday as Director of the Department of Human Resources to issue registration certificates to permit construction by defendants Kahle and Jennings. Viewed in this narrow perspective, no claim for relief within the limited jurisdiction of this court is stated. There is no statute which gives this court jurisdiction to review final state agency action, and quite recently even the Federal Administrative Procedure Act (5 U.S.C. 551, et. seq.) has been definitively interpreted as not constituting a grant of jurisdiction to the district courts. *Califano, Secretary v. Sanders,* —— U.S. ——, 97 S.Ct. 980, 51 L.Ed.2d 192, 1977. Certainly, and again from this narrow perspective, there is nothing in controversy which arises under the Constitution laws or treaties of the United States so as to invoke jurisdiction under 28 U.S.C. 1331(a).

Defendants have argued this issue from the point of view that plaintiffs have not exhausted the remedies provided by the Nevada statutes. We deem this argument to be irrelevant, just as irrelevant as plaintiffs' allegations that defendant Trounday's actions were arbitrary and unreasonable. It would make no difference if plaintiffs had pursued their state administrative and judicial remedies to the hilt. If Trounday's decisions had been sustained, the claim for relief would be the same. Is it sufficient to state a claim for relief in a citizen's suit for enforcement to allege that the federal ambient air quality standards will in fact be violated by defendant's construction projects?

The jurisdiction granted to district courts to entertain citizen's suits is limited. The statute says (42 U.S.C. 1857h–2):

"§ 1857h–2. *Citizen suits—Establishment of right to bring suit*

"(a) Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be.

### Notice

"(b) No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation of (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to 60 days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 1857c–7(c)(1)(B) of this title or an order issued by the Administrator pursuant to section 1857c–8(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

*            *            *

"(f) For purposes of this section, the term 'emission standard or limitation under this chapter' means—

(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard, or

(2) a control or prohibition respecting a motor vehicle fuel or fuel additive,

which is in effect under this chapter (including a requirement applicable by reason of section 1857f of this title) or under an applicable implementation plan."

Plaintiffs argue that the complaint alleges a violation of an emission limitation under the Clean Air Act in that there is alleged a violation of "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard." The jurisdiction of the court to consider and rule upon the issue is unquestioned. In *Metropolitan Washington Coalition for Clean Air v. District of Columbia,* 167 U.S.App.D.C. 243, 511 F.2d 809 (1975), enforcement by citizen's suit of a provision of an approved implementation plan fixing a deadline for closing incinerators was approved. This was patently a schedule or timetable of compliance within the statutory definition. Plaintiffs allege no violation of an emission standard. It is reasonably clear, however, that construction of a new complex source may create a condition which will be in violation of an emission limitation within the meaning of the jurisdictional grant. " 'Emission limitation' is a broad term for those measures within state implementation plans which are necessary to insure attainment and maintenance of the national primary and secondary air quality standards." *Citizens Association of Georgetown v. Washington,* 383 F.Supp. 136 (D.D.C.Col. 1974). In the *Georgetown* case, however, the court concluded that defendants were not required by the implementation plan and regulations to obtain construction permits.

■ In the present case the situation is different. The Nevada plan does require each individual defendant to obtain registration certificates before commencing construction. They did so. Thus, as in *Georgetown,* supra, they have done nothing which offends the implementation plan. If the construction is in conformity with the implementation plan, and not in violation of it or of any other applicable regulation, there can be no violation of an emission standard or limitation. This is because the statute plainly shows that Congress intended to defer to state administrative action under approved plans in the enforcement of the law. We may observe, parenthetically, that we have studied the federal law and regulations and the state statutes and regulations in an effort to track a path through the maze. This is no easy task in the light of the numerous statutory amendments, many of which rephrased, reenacted and renumbered existing provisions, and the numerous amendments to regulations. The conclusion stated is based primarily on the following statutory provisions:

The Congressional findings (42 U.S.C. 1857(a)(3)) state: "that the prevention and control of air pollution at its source is the primary responsibility of States and local governments."

The statute originally (42 U.S.C. 1857d(c)) with respect to state implementation plans required the Secretary (now Administrator) to make the following findings when approving a State plan:

". . . if the Secretary determines that such State standards are consistent with the air quality criteria and recommended control techniques issued pursuant to section 1857c-2 of this title; that the plan is consistent with the purposes of this chapter insofar as it assures achieving such standards of air quality within a reasonable time; and *that a means of enforcement by State action, including authority comparable to that in subsection (k) of this section,* is provided, such State standards and plan shall be the air quality standards applicable to such State." . . . (Emphasis supplied).

This provision was subsequently amended and renumbered (42 U.S.C. 1857c-5) but the deference to state control was retained. The Administrator shall approve such state plan if

"(D) it includes a procedure, meeting the requirements of paragraph (4), for review (prior to construction or modification) of the location of new sources to which a standard of performance will apply;"

The referenced paragraph (4) states:

"(4) The procedure referred to in paragraph (2)(D) for review, prior to construction or modification, of the location of new sources shall (A) provide for adequate authority to prevent the construction or modification of any new source to which a standard of performance under section 1857c-6 of this title will apply at any location which the State determines will prevent the attainment or maintenance within any air quality control region (or portion thereof) within such State of a national ambient air quality

primary or secondary standard, and (B) require that prior to commencing construction or modification of any such source, the owner or operator thereof shall submit to such State such information as may be necessary to permit the State to make a determination under clause (A)."

The Nevada plan was approved as fulfilling the foregoing requirements. Further, the Nevada plan was approved after adoption by the EPA of a specific regulation (40 CFR 51.18):

"(a) Each plan shall set forth legally enforceable procedures which shall be adequate to enable the State or a local agency to determine whether the construction or modification of a facility, building, structure, or installation, or combination thereof, will result in violations of applicable portions of the control strategy or will interfere with attainment or maintenance of a national standard either directly because of emissions from it, or indirectly, because of emissions resulting from mobile source activities associated with it.

"(b) Such procedures shall include means *by which the State or local agency responsible for final decisionmaking on an application for approval to construct or modify will prevent such construction* or modification if it will result in a violation of applicable portions of the control strategy or will interfere with the attainment or maintenance of a national standard.

"(c) Such procedures shall provide for the submission, by the owner or operator of the building, facility, structure, or installation to be constructed or modified, of such information on:

"(1) The nature and amounts of emissions to be emitted by it or emitted by associated mobile sources;

"(2) The location, design, construction, and operation of such facility, building, structure, or installation as may be necessary to permit the State or local agency to make the determination referred to in paragraph (a) of this section.

"(d) Such procedures shall provide that approval of any construction or modification shall not affect the responsibility of the owner or operator to comply with applicable portions of the control strategy.

"(e) Each plan shall identify the State or local agency which will be responsible for meeting the requirements of this section in each area of the State. Where such responsibility rests with an agency other than an air pollution control agency, such agency shall consult with the appropriate State or local air pollution control agency in carrying out the provisions of this section.

"(f) Such procedures shall identify types and sizes of facilities, buildings, structures, or installations which will be subject to review pursuant to this section. The plan shall discuss the basis for determining which facilities shall be subject to review.

"(g) The plan shall include the administrative procedures, which will be followed in making the determination specified in paragraph (a) of this section.

"(h)(1) Such procedures shall provide that prior to approving or disapproving the construction or modification of a facility, building, structure, or installation pursuant to this section, the State or local agency will provide opportunity for public comment on the information submitted by the owner or operator and on the agency's analysis of the effect of such construction or modification on ambient air quality, including the agency's proposed approval or disapproval." (Emphasis supplied).

The EPI adopted 40 C.F.R. 51.18 on June 18, 1973. The EPI also promulgated 40 C.F.R. 52.22 concerning new or modified indirect (complex) sources of pollution. These regulations were the hornbook for NRS 445.491, supra, and the State of Nevada Air Quality Regulations, supra. In promulgating regulations 51.18 and 52.22, the EPI relied in part, for statutory authority, upon 42 U.S.C. 1857c–6 enacted December 31, 1970 (P.L. 91–604). That statute concerning standards of performance for new stationary sources includes subsection c as follows (42 U.S.C. 1857c–6(c):

"(c)(1) Each State may develop and submit to the Administrator a procedure for implementing and enforcing standards of performance for new sources located in such State. If the Administrator finds the State procedure is adequate, he shall delegate to such State any authority he has under this chapter to implement and enforce such standards (except with respect to new sources owned or operated by the United States).

"(2) Nothing in this subsection shall prohibit the Administrator from enforcing any applicable standard of performance under this section."

This enactment suggests to the writer that Congress intended the delegation to State authority (approved by the Administrator) of the enforcement of the regulations pertaining to new sources, retaining only in the Administrator the power of supervisory enforcement.

The inclusion in 42 U.S.C. 1857h–2, the citizen's suit sanction, of authority of any person to commence a civil action alleging a violation of "(B) an order issued by . . . a State with respect to such a standard or limitation," carries the implication that a suit against a person in compliance with a State order is not authorized. Any other interpretation would render subsection (B) meaningless and ineffective for plenary authority would be found in subsection (A).

There are other provisions of this statutory and regulatory swamp which support the Congressional intent to defer to approved State regulatory procedures in administration, maintenance and enforcement of ambient air quality requirements.

In our view, for the reasons stated, a complaint like the one here, states no claim for relief against the State of Nevada and the Director of the Department of Human Resources and states no claim for relief against the individual developers of complex or indirect sources where the complaint affirmatively shows compliance with the procedural and enforcement require-

ments of an approved state plan. Whether or not the state agency, in the opinion of plaintiffs, made a wrong decision is irrelevant.

It is the opinion of the Court that the deficiencies in the complaint cannot be cured by amendment.

Accordingly,

*IT HEREBY IS ORDERED* that the action entitled above is hereby dismissed.